**Roland A. DEXTER and Jane K. Dexter, Plaintiffs-Appellants,**

**v.**

**The EQUITABLE LIFE ASSURANCE SOCIETY OF the UNITED STATES, Defendant-Appellee.**

**No. 151, Docket 75-7247.**

United States Court of Appeals, Second Circuit.

Argued Oct. 24, 1975.

Decided Nov. 18, 1975.

Roland A. Dexter, pro se, for plaintiffs-appellants.

Werner Weinstock, New York City (Michael W. Brody, New York City, on the brief), for defendant-appellee.

Before MOORE, FEINBERG and VAN GRAAFEILAND, Circuit Judges.

FEINBERG, Circuit Judge:

Roland and Jane Dexter brought this antitrust action against the Equitable Life Assurance Society of the United States, alleging that Equitable had violated the Sherman and Clayton Acts, 15 U.S.C. §§ 1, 2 and 14, by requiring Mr. Dexter to purchase life insurance from it as a condition for agreeing to grant the Dexters mortgage loans in 1959, 1961 and 1968. The Dexters contend that such a tying arrangement is a per se violation of the antitrust laws. See *Fortner Enterprises, Inc. v. United States Steel Corp.*, 394 U.S. 495, 89 S.Ct. 1252, 22 L.Ed.2d 495 (1969). The United States District Court for the District of Connecticut, Richard H. Levet, *J.*,[1] dismissed the complaint, holding that section 2 of the McCarran-Ferguson Act, 15 U.S.C. § 1012,[2] deprived the court of jur-

1. Senior Judge, United States District Court for the Southern District of New York, sitting by designation.

2. This provides:

(a) The business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business. (b) No Act of Congress shall be construed to invalidate, impair, or supercede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance: *Provided*, That . . . the Sherman Act, . . . the Clayton Act, and . . . the Federal Trade Commission Act, as amended, shall be applicable to the business of insurance to the extent that such business is not regulated by State law.

isdiction to hear the case. We agree that the practice at issue falls within the antitrust exemption conferred by that statute, and so affirm.

The McCarran-Ferguson Act provides that the regulation of "the business of insurance" shall be left to the states, and that "No Act of Congress shall be construed to . . . supercede" such state regulation, with the proviso that the antitrust laws "shall be applicable to the business of insurance to the extent that such business is not regulated by State law." Plaintiffs contend that the antitrust laws should be held to apply to the alleged tying arrangement because the transaction in question involved the lending of mortgage money and so was not "the business of insurance" within the meaning of the statute, and because the challenged practice is not "regulated by State law."[3]

The argument that the tying of insurance policies to mortgage loans is not "the business of insurance" was rejected by the Ninth Circuit in a case involving this same defendant. *Addrisi v. Equitable Life Assurance Society of the United States,* 503 F.2d 725 (1974), cert. denied, 420 U.S. 929, 95 S.Ct. 1129, 43 L.Ed.2d 400 (1975).[4] We believe that decision is correct. Even if we agreed with plaintiffs that the lending of mortgage money by an insurance company does not in itself constitute "the business of insurance" and so is subject to the antitrust laws, a question we need not decide here, the very basis of the Dexters' complaint is that Equitable used the mortgage loan to coerce the purchase of an insurance policy. Forcing people to buy insurance may well be an undesirable practice—and we do not suggest that we approve of it—but it is part of "the business of insurance." *SEC v. National Securities, Inc.,* 393 U.S. 453, 89 S.Ct. 564, 21 L.Ed.2d 668 (1969), cited by plaintiffs as requiring a narrow construction of the McCarran-Ferguson exemption, is not to the contrary. In that case, the Supreme Court held that section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b), applied to insurance companies despite the McCarran-Ferguson Act. The Court distinguished between regulation of "the relationship between the insurance company and the policyholder," which is peculiar to the "business of insurance" and is governed by McCarran-Ferguson, and regulation of "the relationship between a stockholder and the company in which he owns stock," which "is not insurance regulation, but securities regulation." 393 U.S. at 460, 89 S.Ct. at 569. An insurance company's methods of inducing people to become policyholders pertain to the company-policyholder relationship, and thus constitute an integral part of "the business of insurance."[5]

We therefore agree with the Ninth Circuit that the challenged tying arrangement is part of "the business of insurance" within the meaning of the McCarran-Ferguson Act.

Plaintiffs' second argument, as we understand it, is that because tying arrangements of this sort were not specifically prohibited by Connecticut law at the time of the challenged transactions,[6]

3. The latter contention was not made in plaintiffs' brief, but was raised for the first time in this court at oral argument.

4. One district court originally reached the conclusion that a mortgage loan-insurance policy tie-in was not "the business of insurance," *Fry v. John Hancock Mutual Life Ins. Co.,* 355 F.Supp. 1151 (N.D.Tex.1973), but reversed itself in light of *Addrisi* in an unreported opinion, *Fry v. John Hancock Mutual Life Ins. Co.,* Civil No. CA-2-1301 (N.D.Tex. June 5, 1975).

5. The Supreme Court has held that another method of inducing the purchase of insurance, misleading advertising, was within the McCarran-Ferguson exemption. *FTC v. National Casualty Co.,* 357 U.S. 560, 78 S.Ct. 1260, 2 L.Ed.2d 1540 (1958).

6. They are specifically prohibited now. C.G.S.A. § 38-61, which lists "unfair methods of competition and unfair and deceptive acts or practices in the business of insurance" was amended in 1973 to include the following subsection:

(11) Favored agent or insurer: coercion of debtors.

(a) No person may (i) require, as a condition precedent to the lending of money or exten-

those transactions were not "regulated by State law" and the antitrust laws apply under the proviso of section 1012(b), quoted in note 2 supra. But this argument misunderstands the nature of the state regulation contemplated by the statute. State power to regulate necessarily includes the discretion to prohibit, permit, or limit insurance practices as the state sees fit. The McCarran-Ferguson Act clearly contemplates that where a state undertakes to regulate the business of insurance, it has the power to permit practices which would otherwise violate federal antitrust laws; if the exemption is only to apply when state law squarely prohibits all acts which would, absent the exemption, violate the antitrust laws, the state regulation which the McCarran-Ferguson Act aims to foster, 15 U.S.C. §§ 1011, 1012(a), would be a nullity. *Travelers Insurance Co. v. Blue Cross of Western Pennsylvania,* 481 F.2d 80, 83 n. 10 (3d Cir.), cert. denied, 414 U.S. 1093, 94 S.Ct. 724, 38 L.Ed.2d 550 (1973); *Ohio AFL–CIO v. Insurance Rating Board,* 451 F.2d 1178, 1181 (6th Cir. 1971), cert. denied, 409 U.S. 917, 93 S.Ct. 215, 34 L.Ed.2d 180 (1972). See also Note, The Limits of State Regulation Under the McCarran-Ferguson Act: *Travelers Insurance Co. v. Blue Cross of Western Pennsylvania,* 42 Geo.Wash.L. Rev. 427, 437 & n. 84, and cases there cited.[7]

If the meaning of "regulate" is properly understood, Connecticut law at all relevant times did regulate the business of insurance, with particular reference to unfair methods of selling policies. Included in Connecticut's thorough regulation of the insurance industry, C.G.S.A. Title 38, were broad authority in the Commissioner of Insurance to order discontinuance of practices he finds illegal or improper, C.G.S.A. §§ 38–7, 38–8, and prohibition of an extensive list of unfair practices, C.G.S.A. §§ 38–60, 38–61.[8] Moreover, the Commissioner was authorized to proceed against unfair practices not specifically prohibited, C.G.S.A. § 38–63. Under any of the various tests that have been suggested for determining the sufficiency of state regulation,[9] the practices at issue here were "regulated by [Connecticut] law," and the proviso in 15 U.S.C. § 1012(b) does not make the antitrust laws applicable to this case.[10]

Only one further point needs to be mentioned. The district court, finding the McCarran-Ferguson Act applicable to plaintiffs' claim, dismissed for lack of jurisdiction. We do not believe that this is a proper analysis. Under 28

sion of credit, or any renewal thereof, that the person to whom such money or credit is extended or whose obligation the creditor is to acquire or finance, negotiate any policy or contract of insurance through a particular insurer or group of insurers or agent or broker or group of agents or brokers . . ..

7. The Senate debates preceding adoption of the McCarran-Ferguson Act confirm this view. Senator Pepper, the Act's principal opponent, clearly understood it to permit state regulation "in conflict with and in limitation of the Sherman Act and the Clayton Act," 91 Cong.Rec. 1479 (1945), and under his questioning both Senator McCarran and Senator Ferguson agreed that this was indeed its effect. 91 Cong.Rec. 1443, 1478, 1481 (1945).

8. This list now specifically includes tying arrangements of the sort challenged here. See note 6 supra.

9. E. g., one court has indicated that the existence of a general state regulatory scheme for the insurance industry is sufficient, *Ohio AFL–CIO v. Insurance Rating Board,* 451 F.2d 1178 (6th Cir. 1971), cert. denied, 409 U.S. 917, 93 S.Ct. 215, 34 L.Ed.2d 180 (1972); another would apparently require that the state regulation be "comparable" or "of the same nature" as the displaced federal statutes, *United States v. Chicago Title & Trust Co.,* 242 F.Supp. 56, 71–72 (N.D.Ill.1965); still another has ruled that general state prohibitions on monopolies and restraint of trade, not particularly directed at the insurance business, sufficed, *Professional & Business Men's Life Ins. Co. v. Bankers Life Co.,* 163 F.Supp. 274 (D.Mont.1958).

10. Plaintiffs have not argued that defendant's conduct amounts to an "act of boycott, coercion, or intimidation" to which the Sherman Act remains applicable under 15 U.S.C. § 1013(b), despite the general antitrust exemption of 15 U.S.C. § 1012(b), and so we do not reach the applicability of that subsection to circumstances like these. For the view that it does not apply, see *Addrisi v. Equitable Life Assurance Society of the United States,* 503 F.2d 725, 728–29 (9th Cir. 1974), cert. denied, 420 U.S. 929, 95 S.Ct. 1129, 43 L.Ed.2d 400 (1975).

U.S.C. § 1337, the district courts have jurisdiction of "any civil action or proceeding arising under any Act of Congress . . . protecting trade and commerce against restraints and monopolies." This action, in which plaintiffs assert that defendant has violated the antitrust laws, clearly comes within that grant of jurisdiction. The fact that defendant's conduct, by reason of the exemption to the antitrust laws provided by the McCarran-Ferguson Act, does not violate those statutes does not deprive the court of jurisdiction to hear the case. Rather, that Act requires the district court to determine the case *on the merits* in favor of the defendant. That plaintiffs' complaint does not state a claim for which relief under the antitrust laws can be granted does not mean that this case was outside federal jurisdiction. See generally *Bell v. Hood,* 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946); *Montana-Dakota Utilities Co. v. Northwestern Public Service Co.,* 341 U.S. 246, 249, 71 S.Ct. 692, 95 L.Ed. 912 (1951).

Accordingly, the dismissal of plaintiffs' complaint is affirmed.