**FEDERAL TRADE COMMISSION,**
**Petitioner-Appellee,**

v.

**DIXIE FINANCE COMPANY, INC. and**
**Transouth Financial Corporation,**
**Respondents-Appellants.**

**No. 82–3404.**

United States Court of Appeals,
Fifth Circuit.

Jan. 20, 1983.

---

Lemle, Kelleher, Kohlmeyer & Matthews, Alan H. Goodman, New Orleans, La., William H. Allen, Washington, D.C., for Dixie.

W. Bailey Watson, Florence, S.C., for Transouth Financial Corp.

Frank Max Salinger, Washington, D.C., for amicus curiae Nat. Consumer.

Leslie Rice Melman, Washington, D.C., for petitioner-appellee.

Ernest L. Sarason, Jr., Boston, Mass., for amicus Nat. Clients Counsel.

David I. Greenberg, Washington, D.C., for amicus Consumer Federation.

Before GARZA, REAVLEY and TATE, Circuit Judges.

GARZA, Circuit Judge:

Finding that the conclusion of the court below that the conduct being investigated by the Federal Trade Commission did not relate to respondents as insurers but as finance companies whose methods of inducing potential borrowers to purchase insurance is an integral part of the arrangement of credit and not the "business of insurance" was eminently correct, we affirm this case on the basis of Judge Charles Schwartz's opinion of June 14, 1982, attached hereto as Appendix "A".

AFFIRMED.

APPENDIX A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| FEDERAL TRADE COMMISSION | CIVIL ACTION |
|---|---|
| VS. | No. 82–201 |
| DIXIE FINANCE COMPANY, INC., ET AL. | SECTION "A" |

CHARLES SCHWARTZ, Jr., District Judge.

This proceeding was invoked by the Federal Trade Commission (Commission) pursuant to Section 20 of the Federal Trade Commission Act, 15 U.S.C. 57b–1[1] for an order compelling respondents to comply with civil investigative demands (CIDs) is-

1. (e) Whenever any person fails to comply with any civil investigative demand duly served

sued by the Commission during the course of an investigation to determine whether respondents may be or may have been engaged in unfair or deceptive acts or practices in violation of Section 5(a) of the Federal Trade Commission Act, 15 U.S.C. 45(a)(2).[2] Specifically, the purpose of the investigation is to determine whether finance companies, automobile dealerships or others may be engaged in unfair or deceptive acts or practices in connection with arranging for or consummating of a consumer credit transaction, including misrepresenting, directly or by implication, that the purchase of credit insurance is a prerequisite to the extension of credit.

Respondents have failed to provide the requested documents on the ground that the Commission's inquiry is an unlawful attempt to investigate and regulate the "business of insurance" which is protected by the McCarran-Ferguson Act, 15 U.S.C. 1012(b)[3] (McCarran Act) from review by the Federal Trade Commission.

Exhaustive briefs were filed by all parties and oral argument was heard, after which this matter was taken under submission by the Court. After a review of the arguments and the memoranda, the Court concludes that the information the Commission seeks is not immunized from investigation by the "business of insurance" exemption of the McCarran Act.

Dixie and TransSouth are consumer finance companies that directly and through corporate affiliates sell life and health and accident insurance to their loan customers.

Their position is that any investigation is barred under the McCarran Act since the "sale of insurance incident to a loan transaction is regulated by every state in which Dixie or TransSouth does business." Both companies sell insurance as an incident of their lending activities; both companies allege that since every state in which they sell governs the sale of insurance to borrowers and each state prohibits fraud and deception in any such sale, they clearly fall within the parameters of the McCarran Act exemption. The issue thus becomes whether the actions of the respondents which the Commission seeks to investigate are regulated by state law.

By way of example, the Louisiana Insurance Code, R.S. 22:1211–1217 regulates the trade practices in the business of insurance in accordance with the intent of Congress as expressed in the McCarran-Ferguson Act; R.S. 22:1214 provides a listing of those methods, acts and practices which are defined as unfair or deceptive. The pertinent provisions for our purposes are R.S. 22:1214(1), (2) and (9) which provide:

The following are declared to be unfair methods of competition and unfair or deceptive acts or practices in the business of insurance:

(1) Misrepresentations and false advertising of policy contracts. Making, issuing, or circulating, or causing to be made, issued, circulated, any estimate, illustration, circular or statement misrepresenting the terms of any policy issued or to be issued or the benefits or advantages promised thereby, or the dividends or

---

upon him under this Section, or whenever satisfactory copying or reproduction of material requested pursuant to the demand cannot be accomplished and such person refuses to surrender such material, the Commission, through such officers or attorneys as it may designate, may file, in the district court of the United States for any judicial district in which such person resides, is found, or transacts business, and serve upon such person, a petition for an order of such court for the enforcement of this section.

2. The Commission is empowered and directed to prevent persons, partnerships, or corpora-

tions ... from using ... unfair or deceptive acts or practices in or affecting commerce.

3. Sec. 2(a) The business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business.

(b) No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance...

share of the surplus to be received thereon, or making any false or misleading statement as to the dividends or share of surplus previously paid on similar policies, or making any misleading representation or any misrepresentation as to the financial condition of any insurer, or as to the legal reserve system upon which any life insurer operates, or using any name or title of any policy or class of policies misrepresenting the true nature thereof, or making any misrepresentation to any policyholder insured in any insurer for the purpose of inducing or tending to induce such policyholder to lapse, forfeit, or surrender his insurance, or making any representation that the promised coverage is available to groups of persons when such persons do not fall within groups defined in this Code. In case of advertisements of policies providing health, accident, sickness or medical benefits where such policies are either cancellable or renewable at the option of the insurer, such advertisements shall contain a statement to that effect in prominent type, and when details of benefits provided by a particular policy or plan of accident or health insurance are set forth in any advertising material, such advertising material shall disclose the major limitations of such policy or plan as well as the coverage advantage or benefits offered or promised.

(2) False information and advertising generally. Making, publishing, disseminating, circulating, or placing before the public, or causing, directly or indirectly, to be made, published, disseminated, circulated, or placed before the public, in a newspaper, magazine or other publication, or in the form of a notice, circular, pamphlet, letter or poster, or over any radio or television station, or in any other way, an advertisement, announcement or statement containing any assertion, representation or statement with respect to the business of insurance or with respect to any person in the conduct of his insurance business, which is untrue, deceptive or misleading.

(9) Requiring as a condition precedent to lending money upon the security of a mortgage on movable or immovable property that the borrower negotiate any policy of insurance covering such property through a particular insurance agent or agents, company or companies, type of company or types of companies, broker or brokers. Provided, however, that this provision shall not prevent the exercise by any mortgagee of his right to approve the insurer selected by the borrower on a reasonable non-discriminatory basis related to the solvency of the company and its ability to service the policy. The mortgagee may require that the amount of insurance be at least in an amount to protect the amount of the loan on a type of policy furnishing reasonable protection to the mortgagee in a form selected by the borrower which may include additional coverages not inuring to the benefit of the mortgagee and reasonably associated or connected with the property which is the subject of the loan or mortgage. Notwithstanding the provisions of R.S. 22:1212, any lender either directly or indirectly requiring a borrower to furnish insurance upon such property shall be subject to the conditions and prohibitions of this paragraph.

The Commission has stated that its sole objective in the current inquiry "is to determine whether respondents and other companies engaged in the business of consumer financing may be misrepresenting the optional status of credit insurance to prospective borrowers. The Commission has further stated that it is interested solely in "possible misrepresentations concerning the conditions under which a loan will be granted, and not the actual sale or methods of selling credit insurance." The Commission argues that the "business of insurance" is not involved because an insurance policy is only tangentially involved and that none of the elements of the insurer-insured relationship are being scrutinized by the Commission.

These elements were enunciated in *Group Life & Health Ins. v. Royal Drug Co.,* 440 U.S. 205, 99 S.Ct. 1067, 59 L.Ed.2d 261

(1979) as the spreading and underwriting of a policyholder's risk and the contract between the insurer and the insured. In applying *Royal Drug*, the focus must be on the particular activity under attack; here, the possible misrepresentation that the purchase of credit insurance is a prerequisite to the extension of credit. There is no argument that the sale of an insurance policy is undoubtedly the "business of insurance" for McCarran Act purposes. *Cody v. Community Loan Corp. of Richmond Cty.*, 606 F.2d 499 (5th Cir.1979), *SEC v. National Securities, Inc.*, 393 U.S. 453, 89 S.Ct. 564, 21 L.Ed.2d 668 (1969). It is not the actual sale, but the fact that the sale is a precondition to the extension of credit that is critical here. Were the Commission attempting to investigate the *sale* of these policies, clearly the state statutes, such as Louisiana's R.S. 22:1212, would govern and the McCarran Act exemption would apply. But the Commission is not investigating any misrepresentations made in connection with the terms of any policy to be issued; rather, it is concerned with the extension of credit. While the offering of such policies in such a setting may facilitate the sale of insurance policies, that alone does not elevate the activity to the "business of insurance." *Perry v. Fidelity Union Life Insurance Co.*, 606 F.2d 468 (5th Cir.1979).

The Fifth Circuit has consistently held, in a somewhat different factual setting, that the lending activities are apart from any insurance activities a company may engage in.[4] In determining whether an insurance activity is involved that will invoke the McCarran Act exemption the Fifth Circuit relied upon the guidance provided by the Supreme Court in *SEC v. National Securities, Inc.*, 393 U.S. 453, 89 S.Ct. 564, 21 L.Ed.2d 668 (1969) which stated that the relationship between the insurer and insured, the type of policy which could be issued, its reliability, interpretation and enforcement are at the core of the "business of insurance." In *Cochran*, supra, the defendant was *not* an insurance company, and

the Court found that its activities in financing insurance premiums was not the "business of insurance," since the defendant was only performing the same role that other financing companies did in the consumer sales business. *Cody,* supra, is more on point factually to the situation with which we are faced. In *Cody* a loan corporation offered cancer insurance for sale in its loan offices. The Court acknowledged that the sale of an insurance policy is undoubtedly the "business of Insurance" for McCarran Act purposes. However, it further stated that the lending activities of an insurance company are apart from that business: "the financing activity is purely ancillary to the insurance relationship between the insurance company and the policyholder," citing *Perry* supra, at 470.

Applying the analysis established by the Fifth Circuit to the instant case leads us to conclude that the relationship involved between Dixie Finance and TransSouth and its customers which the Commission seeks to investigate is *not* the relationship between insurer and insured. It is the *credit* relationship that the Commission is concerned with; specifically, whether the sale of insurance is a precondition to the arrangement of credit. The "business of insurance" intrudes upon the business of financing only at the point at which the borrower or his lender deal with the insurer regarding the particulars of the policy being purchased. *Peacock Buick, Inc. v. FTC,* 86 F.T.C., 1532 (1975), on reconsideration, 87 F.T.C., 379 (1976), affirmed *Mem.,* 553 F.2d 97 (4th Cir.1977).

The Specifications set out by the Commission in its CIDs do not intrude on the insurer-insured relationship; they seek to determine only whether respondents may be making false or misleading misrepresentations to prospective borrowers that credit insurance is a prerequisite to the extension of consumer credit. The Commission is not concerned with the "reliability, interpretation and enforcement" of the insurance contract. See *National Securities,* supra.

---

4. See *Cochran v. Paco, Inc.,* 606 F.2d 460 (5th Cir.1979), *Perry v. Fidelity Union Life Ins. Co.,* 606 F.2d 468 (5th Cir.1979), and *Cody v. Community Loan Corp. of Richmond Cty.,* 606 F.2d 499 (5th Cir.1979) which concern premium financing and credit sales of insurance policies.

APPENDIX—Continued

Respondents rely on interpretations of the insurer-insured relationship by the Second and Ninth Circuits in *Addrisi v. Equitable Life Assurance Society of U.S.,* 503 F.2d 725 (9th Cir.1974) and *Dexter v. Equitable Life Assurance Society of U.S.,* 527 F.2d 233 (2nd Cir.1975). We feel that these decisions have lost their viability and are distinguishable in light of the Supreme Court's decision in *Royal Drug,* supra, wherein the emphasis was placed on the particular activity being questioned. In both Dexter and Addrisi the practices under attack were being performed by insurance companies and concerned the relationship between the insurer and the policyholder. Were the respondents in this matter insurance companies, the holdings of *Dexter* and *Addrisi* might carry more weight. But under the dictates of *Royal Drug* we are required to limit our determination as to the "business of insurance" to the discrete conduct in question. We conclude that the conduct being investigated does not relate to respondents as insurers, but as finance companies whose methods of inducing potential borrowers to purchase insurance is an integral part of the arrangement of credit and not the "business of insurance." As so succinctly stated in *Royal Drug,* "the exemption is for the 'business of insurance,' not the 'business of insurers.' "[5]

As we find that the respondents are in the business of extending credit, not insurance coverage, and that the investigation of the sale of any insurance relates to the arrangement of credit between the respondents and prospective borrowers, such sales are subject to inquiry by the Federal Trade Commission to the extent that the inquiry is limited to the Specifications enumerated in the CIDs. The scope of the investigation is not protected by the McCarran-Ferguson Act, since we find that the practices in question induce the purchase of credit and as such are not the "business of insurance" within the meaning of that Act.

As we find that the Commission's investigation is proper under section 5(a) of the FTC Act, 15 U.S.C. 45(a)(2), we do not address respondents' other arguments as to the applicability of the Truth-in-Lending Act, or as to the Commission's right to secure the information it seeks through compulsory process.

Accordingly, it is ordered that Dixie Finance Company and TransSouth produce the documentary evidence as required in the civil investigative demand issued to respondents.

New Orleans, Louisiana, this 14th day of June, 1982.

REAVLEY, Circuit Judge, dissenting:

Our question is whether § 2(b) of the McCarran-Ferguson Act (the "McCarran Act"), 15 U.S.C. § 1012(b), bars the application of disclosure provisions of the Federal Trade Commission ("FTC") Act, 15 U.S.C. § 45 when a finance company allegedly requires its loan customers to purchase insurance policies through the finance company by falsely representing to the customer that the purchase of insurance is a prerequisite to obtaining a loan. I would hold that the McCarran Act does bar application of the provisions of the FTC Act.

It is now well-established that the McCarran Act exemption[1] is for the "business of insurance" rather than the "business of insurers." *Group Life & Health Insurance v. Royal Drug Co.,* 440 U.S. 205, 211, 99 S.Ct. 1067, 1073, 59 L.Ed.2d 261 (1979). Thus, it is of no import here that the defendants are consumer finance or small loan companies; the relevant inquiry is into the *nature* of the transactions at issue. *Perry v. Fidelity*

---

5. *Royal Drug,* supra, 440 U.S. at 211, 99 S.Ct. at 1073.

1. The exemption provides:
   No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance: *Provided, . . .* That the Federal Trade Commission Act, as amended, shall be applicable to the business of insurance to the extent that such business is not regulated by state law.
   15 U.S.C. § 1012(b).

*Union Life Insurance Co.,* 606 F.2d 468, 470 (5th Cir.1979), *cert. denied,* 446 U.S. 987, 100 S.Ct. 2973, 64 L.Ed.2d 845 (1980). This court has previously held that a loan company's *selling* of cancer insurance policies constituted the "business of insurance" for McCarran Act purposes, although its *financing* of the premium did not; in other words, the mere fact that the loan company sold the policies it financed did not preclude application of the Truth-in-Lending Act to the credit feature of the transaction, since the financing alone was insufficient to invoke the McCarran Act exemption. *Cody v. Community Loan Corporation,* 606 F.2d 499, 503 (5th Cir.1979), *cert. denied,* 446 U.S. 988, 100 S.Ct. 2973, 64 L.Ed.2d 846 (1980). When a finance company tells a borrower/buyer that he must buy an insurance policy in order to complete the desired transaction, the finance company is *selling* insurance. If the borrower/buyer accedes to the selling tactic and agrees to buy the insurance, only then does the activity move to the financing of the cost of that insurance.

The facts here are in effect identical to those in *Dexter v. Equitable Life Assurance Society,* 527 F.2d 233 (2d Cir.1975) and *Addrisi v. Equitable Life Assurance Society,* 503 F.2d 725 (9th Cir.1974), *cert. denied,* 420 U.S. 929, 95 S.Ct. 1129, 43 L.Ed.2d 400 (1975). Both of these cases held that the tying of insurance policies to mortgage loans, whereby persons obtaining such loans were *required* to buy life insurance from the lender, constituted the "business of insurance" for McCarran Act purposes, thus precluding application of federal antitrust laws to invalidate the tying arrangements. The fact that the customers were required to buy insurance was of critical significance:

> Even if we agreed with plaintiffs that the lending of mortgage money by an insurance company does not in itself constitute "the business of insurance" and so is subject to the antitrust laws, a question we need not decide here, the very basis of the Dexters' complaint is that Equitable used the mortgage loan to coerce the purchase of an insurance policy. Forcing people to buy insurance may well be an undesirable practice—and we do not suggest that we approve of it—but it is part of "the business of insurance." ... An insurance company's methods of inducing people to become policyholders pertain to the company-policyholder relationship, and thus constitute an integral part of "the business of insurance."

*Dexter,* 527 F.2d at 235 (footnote omitted).

The district court below felt that *Dexter* and *Addrisi* had "lost their viability and [were] distinguishable in light of the Supreme Court's decision in *Royal Drug,* supra, wherein the emphasis was placed on the particular activity being questioned. In both *Dexter* [*sic*] and *Addrisi* [*sic*] the practices under attack were being performed by insurance companies and concerned the relationship between the insurer and the policyholder. Were the respondents in this matter insurance companies, the holdings of *Dexter* and *Addrisi* might carry more weight." This looks at the Court's holding in *Royal Drug* upside down. The Supreme Court in that case held that the McCarran Act exemption is for the "business of insurance", not the "business of insurers," which means to me that it was irrelevant that the party defendants in *Dexter* and *Addrisi* were themselves insurance companies.

This court has implied that a loan company's inducing or requiring customers to purchase insurance constitutes the "business of insurance." In distinguishing the applicability of *Dexter* and *Addrisi* in the case where an insurance company provided premium financing in connection with the sale of insurance policies, the *Perry* court wrote that "in these cases the inducement was actually a requirement, and forcing prospective policyholders to buy insurance cannot be equated with making the purchase 'easier' by offering premium financing." *Perry,* 606 F.2d at 470–71 n. 6. In the situation here, where customers of the finance companies have been falsely informed that the purchase of insurance is a mandatory prerequisite to the obtaining of a loan, the *Perry* court's rationale for distinguishing *Dexter* and *Addrisi* would re-

quire us to reach a contrary result. This conclusion is supported by *FTC v. National Casualty Co.,* 357 U.S. 560, 78 S.Ct. 1260, 2 L.Ed.2d 1540 (1958), where the Supreme Court held that another method of inducing the purchase of insurance, misleading advertising, was within the McCarran Act exemption.

I would hold that the sale of an insurance policy, induced by the true or false representation that its purchase is necessary to obtain a loan, constitutes the "business of insurance", thus triggering the McCarran Act exemption and precluding application of federal antitrust law or the FTC Act's provisions on unfair or deceptive acts. Furthermore, I would hold that the "business of insurance" as it is present here is regulated by state law and that application of the FTC Act would "invalidate, impair, or supercede" such state law in contravention of the McCarran Act exemption. The district court's opinion analyzed how Louisiana insurance law would regulate the practices complained of in this case. *See* La.Rev. Stat.Ann. §§ 22:1214(1), (2), (9) (West 1978). Moreover, even if some of the states in which the defendants conduct their insurance business do not prohibit the practices now complained of, it does not follow that such activities are thereby "unregulated" by a state or that application of the FTC Act would not "invalidate, impair or supercede" state law. *See Perry,* 606 F.2d at 478–84 (Brown, J., dissenting); *Dexter,* 527 F.2d at 235–36.

While I certainly do not condone the practice of finance companies falsely informing their customers that the purchase of insurance is a prerequisite to obtaining a loan, activities of this sort, involving (as I believe they do) the "business of insurance" may only be regulated by the states, and not by application of the FTC Act in contravention to the clear dictate of the McCarran Act exemption.

I respectfully dissent.