**HOMESTEAD MOBILE HOMES, INC.**

v.

**FOREMOST CORPORATION OF AMERICA; Foremost Insurance Company; Foremost County Mutual Insurance Company; and Valentine Financial, Inc.**

Civ. A. No. CA–7–84–116.

United States District Court,
N.D. Texas,
Amarillo Division.

Jan. 2, 1985.

James E. Elliott, Witherspoon, Aikin & Langley, Hereford, Tex., for plaintiff.

Gregory S.C. Huffman, Thompson & Knight, Tom Thomas, Kolodey, Thomas & Yeager, Dallas, Tex., for defendants.

## ORDER

MARY LOU ROBINSON, District Judge.

Plaintiff Homestead Mobile Homes, Inc. ("Homestead"), a retail dealer in new and used mobile homes, has instituted this antitrust suit against Defendants Valentine Financial, Inc., ("Valentine"), Foremost Corporation of America, Foremost Insurance Company, and Foremost County Mutual Insurance Company (collectively "Foremost"), under Section 1 of the Sherman Act for an alleged "tying arrangement" and "concerted refusal to deal and group boycott," and under Section 2 of the Act for an alleged "monopolization, attempt to monopolize and conspiracy to monopolize." Homestead alleges that the defendants entered into "an arrangement whereby Valentine would furnish the financing of mobile homes to the consumers and Foremost would protect Valentine by reinsuring their loans." Homestead further alleges that "as a conduit to this arrangement," Valentine agreed to finance only those contracts which were covered by Foremost's physical property damage insurance. In other words, Homestead predicates its antitrust causes of action on two facts: (1) that Foremost was tying two types of insurance—credit and physical damages property insurance, and (2) that Homestead did business with a company (Valentine) which allegedly conditioned its financing of the purchase of Foremost's insurance.

Both Valentine and Foremost have moved to dismiss the action for failure to state a claim upon which relief can be granted. Valentine argues that Homestead has failed to state a claim "because interstate financing is not an activity

which, as a matter of law, can be a tying service in violation of the Sherman Act, 15 U.S.C. § 1 *et seq."* Foremost argues that it is exempt from the Sherman Act by virtue of Section 2 of the McCarran-Ferguson Act, 15 U.S.C. § 1012 (1982).

### Valentine's Motion

■ The only ground for dismissal put forth in Valentine's motion, that "interstate financing is not an activity which ... can be a 'tying service' in violation of the Sherman Act," is without merit. In *Fortner Enterprises v. United States Steel Corp.,* 394 U.S. 495, 508–09, 89 S.Ct. 1252, 1261–62, 22 L.Ed.2d 495 (1969), the Supreme Court could find "no basis for treating credit differently in principle from other goods and services" for purposes of analyzing a tying arrangement alleged to violate the Sherman Act.

Valentine's Brief in Support of its Motion discloses that Valentine also seeks dismissal because Homestead has not adequately pleaded the elements of an antitrust violation. In determining this motion, the Court must accept as true all the well-pleaded facts in the Complaint and view them in the light most favorable to plaintiff. The motion should not be granted unless it appears to a certainty "that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

Rule 8(a), Fed.R.Civ.P., requires "a short and plain statement of the claim showing that the pleader is entitled to relief." In the antitrust area, "[t]he current trend ... is toward greater liberality in pleading," *Brett v. First Federal Savings & Loan Ass'n,* 461 F.2d 1155, 1157 (5th Cir.1972), and away from detailed facts.

[M]any federal courts have rejected the demand for more elaborate pleadings in antitrust cases.... As far as most federal courts are concerned, it is now reasonably clear that the standard in Rule 8(a) calling for a short and plain statement of the claim for relief is to be applied in the "big case" in the same fashion as it is in any other action.

   .    .    .    .    .

Thus, facts do not have to be alleged in detail and the statement of the essential elements of the claim has been simplified. Nonetheless, it continues to be necessary for plaintiff to state his claim for relief with care. A general allegation that defendant violated one of the antitrust laws and that plaintiff was injured thereby is not sufficient. Enough data should be pleaded from which the elements of the claim for relief can be identified.

5 Wright & Miller, Federal Practice & Procedure, Civil § 1228 at 167, 170 (1969).

■ Here, the Court finds that Plaintiff has adequately pleaded its claim. The central facts surrounding the tying arrangement and Homestead's injury are set forth in the complaint.[1] Valentine's motion demonstrates that there is no doubt about what has been alleged, what Homestead must show to prevail, and what Valentine must defend against. This case does not appear to be the sort of "potentially massive factual controversy" in which the Court should insist upon a high degree of specificity in pleading. See *Associated General Contractors of California v. California State Council of Carpenters,* 459 U.S. 519, 528

---

**1.** Valentine's reliance on *Foremost Pro Color v. Eastman Kodak Co.,* 703 F.2d 534 (9th Cir.1983), is misplaced. In that case, the Ninth Circuit found that Foremost had failed to adequately plead an antitrust violation, noting that:

> Foremost's complaint pointedly refrains from alleging that Kodak itself required the purchase of film as a *condition* of the sale of cameras, or required the purchase of chemicals and paper as a *condition* of the sale of film .... In the absence of an allegation that the purchase of the alleged tied products was

required as a condition of sale of the alleged tying products, rather than as a prerequisite to practical and effective use of the tying products, Foremost's complaint failed to plead the coercion essential to a *per se* unlawful tying arrangement.

*Id.* at 541–42. Here, Homestead has plainly alleged that Valentine refused to provide it with the tying service (nonrecourse financing of used mobile home purchases) because Homestead refused to utilize the tied product (Foremost's insurance).

n. 17, 103 S.Ct. 897, 903 n. 17, 74 L.Ed.2d 723 (1983). Of course, should it develop that the Complaint is not well grounded in fact, appropriate sanctions are available under Fed.R.Civ.P. 11.

Valentine's Motion to Dismiss is denied.

*Foremost's Motion*

Foremost asserts that Homestead's action should be dismissed because the activities complained of comprise the "business of insurance" and, thus, are exempt from the application of the Sherman Act by virtue of § 2(b) of the McCarran-Ferguson Act,[2] if the other requirements of that Act are met. The initial inquiry, then, is whether the actions complained of here constitute the "business of insurance," as that term is used in the Act.

■ Three criteria are relevant in determining whether a particular practice is part of the "business of insurance" exempted from the antitrust laws by § 2(b):

(1) Whether the practice has the effect of transferring or spreading a policyholder's risk;

(2) Whether the practice is an integral part of the policy relationship between the insurer and insured; and

(3) Whether the practice is limited to entities within the insurance industry.

*Union Labor Life Ins. Co. v. Pireno*, 458 U.S. 119, 129, 102 S.Ct. 3002, 3008, 73 L.Ed.2d 647 (1982); *Group Life & Health Ins. Co. v. Royal Drug Co.*, 440 U.S. 205, 99 S.Ct. 1067, 59 L.Ed.2d 261 (1979). Prior to the Supreme Court's decision in *Royal Drug*, two Circuits had concluded that tying arrangements similar to the one challenged here constituted the business of insurance for purposes of § 2(b).

In *Addrisi v. Equitable Life Assurance Society of the United States*, 503 F.2d 725 (9th Cir.1974), the defendant refused to loan money for the purchase of residential real estate unless the borrower also purchased a high-cost life insurance policy. Finding that this constituted the business of insurance within the meaning of § 2(b), the Ninth Circuit said:

Addrisi's allegations establish that Equitable is qualified and does actively engage in the business of life insurance within the State of California as well as all other sister states. While Equitable does also engage in the real estate loan business in California as an adjunct to its business of insurance, Addrisi complains only of the tactics and practices of Equitable in connection with its business of insurance as being proscribed by the antitrust laws of the United States.

*Id.* at 727.

In *Dexter v. Equitable Life Assurance Society of the United States*, 527 F.2d 233 (2d Cir.1975), the identical practice by the same defendant was challenged. Agreeing with *Addrisi* that the action was barred by the McCarran-Ferguson Act, the Second Circuit said:

Even if we agreed with plaintiffs that the lending of mortgage money by an insurance company does not itself constitute "the business of insurance" and so is subject to the antitrust laws, a question we need not decide here, the very basis of the Dexters' complaint is that Equitable used the mortgage loan to

---

**2.** The Act provides in relevant part:

"Congress hereby declares that the continued regulation and taxation by the several States of the business of insurance is in the public interest, and that silence on the part of the Congress shall not be construed to impose any barrier to the regulation or taxation of such business by the several States.

"Sec. 2(a) The business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business.

"(b) No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance; Provided, That after June 30, 1948, the Act of July 2, 1890, as amended, known as the Sherman Act, and the Act of October 15, 1914, as amended, known as the Clayton Act, and the Act of September 26, 1914, known as the Federal Trade Commission Act, as amended, shall be applicable to the business of insurance to the extent that such business is not regulated by State law.

15 U.S.C. §§ 1011–1012 (1982).

coerce the purchase of an insurance policy. Forcing people to buy insurance may well be an undesirable practice—and we do not suggest that we approve of it—but it is part of "the business of insurance." ... An insurance company's methods of inducing people to become policyholders pertain to the company-policyholder relationship, and thus constitute an integral part of "the business of insurance."

*Id.* at 235.

Neither *Dexter* nor *Addrisi* has been well received in the Fifth Circuit. For example, in *Perry v. Fidelity Union Life Ins. Co.*, 606 F.2d 468 (5th Cir.1979), the court held that premium financing by an insurance company does not constitute the "business of insurance" within the meaning of § 2(b). With regard to *Dexter* and *Addrisi*, the court said:

We recognize that other courts, in other contexts, have held that an insurance company's inducing persons to become policyholders is part of the business of insurance. However, in these cases the inducement was actually a requirement, and forcing prospective policyholders to buy insurance cannot be equated with making the purchase "easier" by offering premium financing. Moreover, if this "inducement" rationale were applied in the financing context, the activities of any lender who engages in premium financing would constitute the "business of insurance." We have rejected such a result ... and application of the "inducement" theory in the instant case would make the McCarran Act's applicability turn on *who* is engaged in premium financing rather than on the *nature* of that activity.

*Id.* at 470 n. 6.

In dissent, Judge Brown argued vigorously that the case was analytically indistinguishable from *Dexter* and *Addrisi*. *Id.* at 477.

The most recent Fifth Circuit pronouncement in this area is *Federal Trade Commission v. Dixie Finance Co.*, 695 F.2d 926 (5th Cir.1983). In *Dixie Finance*, the Federal Trade Commission sought an order compelling compliance with civil investigative demands it had issued seeking information related to whether the defendant consumer finance companies were unfairly or deceptively misrepresenting to borrowers that the purchase of credit insurance was a prerequisite to the extension of credit. The finance companies resisted production of the documents sought, arguing that the Commission's inquiry was an unlawful attempt to investigate and regulate the "business of insurance" because § 2(b) of the Act exempts these practices from review by the Commission. The district court ordered production and the Fifth Circuit affirmed, adopting the district court's opinion. The court said:

It is not the actual sale, but the fact that the sale is a precondition to the extension of credit that is critical here. Were the Commission attempting to investigate the *sale* of these policies, clearly the state statutes ... would govern and the McCarran Act exemption would apply. But the Commission is not investigating any misrepresentations made in connection with the terms of any policy to be issued; rather it is concerned with the extension of credit. While the offering of such policies may facilitate the sale of insurance policies, that alone does not elevate the activity to the "business of insurance."

[T]he relationship involved between Dixie Finance and TransSouth and its customers which the Commission seeks to investigate is *not* the relationship between insurer and insured. It is the *credit* relationship that the Commission is concerned with; specifically, whether the sale of insurance is a precondition to the arrangement of credit. The "business of insurance" intrudes upon the business of financing only at the point at which the borrower or his lender deal with the insurer regarding the particulars of the policy being purchased.

*Id.* at 930.

The court found that *Dexter* and *Addrisi* "have lost their viability and are distinguishable in light of [*Royal Drug*]." *Id.*

at 931. In dissent, Judge Reavley argued vigorously that the case was analytically indistinguishable from *Dexter* and *Addrisi. Id.* at 932–33.

Here, according to the Complaint, neither Homestead nor its customers ever reached the point of dealing with Foremost regarding the particulars of any policy to be issued. *Dixie Finance,* thus, compels this Court to conclude that the activities challenged here are not the "business of insurance" within the meaning of § 2(b) of the McCarran-Ferguson Act and are susceptible to antitrust scrutiny.

■ This conclusion finds support in the three criteria of *Royal Drug.* The tying arrangement, with insurance as the tied product, does not have the effect of transferring or spreading a policyholder's risk.[3] The tying arrangement is not an integral part of the policy relationship between the insurer and the insured because it has no relation to "the type of policy which could be issued, its reliability, interpretation, and enforcement." *Pireno,* 458 U.S. at 128, 102 S.Ct. at 3008, quoting *SEC v. National Securities,* 393 U.S. 453, 460, 89 S.Ct. 564,

568, 21 L.Ed.2d 668 (1969). Finally, the practice of tying arrangements is not limited to entities within the insurance industry. Here, for example, the alleged tying arrangement involves a third party, Valentine, "wholly outside the insurance industry." *Pireno,* 458 U.S. at 129, 102 S.Ct. at 3008.

■ Indeed, because Valentine is an entity wholly outside the insurance industry, Foremost's Motion to Dismiss would have to be denied even if the challenged activity constituted the "business of insurance" for purposes of the Act. The Supreme Court has stated that "an exempt entity forfeits antitrust exemption by acting in concert with nonexempt parties." *Royal Drug,* 440 U.S. at 231, 99 S.Ct. at 1083. Here, there is no contention that Valentine was engaged in the "business of insurance," as it was not. Since Foremost allegedly acted in concert with this nonexempt party, Foremost forfeited any antitrust exemption it might have had.[4]

Foremost's Motion to Dismiss is denied.[5]

It is so ORDERED.

3. In a converse situation, where insurance is the tying product, some courts have found that the tying arrangement is related to the transferring or spreading of a policyholder's risk. For example, in *Feinstein v. Nettleship Co. of Los Angeles,* 714 F.2d 928 (9th Cir.1983), the defendant insurer offered malpractice insurance only to members of the Los Angeles County Medical Association, although LACMA members were free to purchase malpractice insurance from any carrier. The Court concluded that:

> The practice is ... demonstrably related to the allocation and spreading of risk, for ... it defines a pool of insureds over which risk is spread. The medical association sought to provide a single insurance broker for all of its members in order to assure coverage for certain high-risk specialties, thereby distributing risk across the membership. The effect is to spread risk across a wide area, and that is precisely what the Supreme Court described when it formulated the risk spreading criterion.
>
> *Id.* at 932.

Since the other requirements of the exemption were met, the court applied the McCarran-Ferguson Act and exempted the insurer's practice from antitrust scrutiny. *Accord, Owens v. Aetna Life & Cas. Co.,* 654 F.2d 218 (3d Cir.), *cert. denied,* 454 U.S. 1092, 102 S.Ct. 657, 70 L.Ed.2d 631 (1981).

Similarly, in *Anglin v. Blue Shield of Virginia,* 693 F.2d 315 (4th Cir.1982), the plaintiff alleged that the defendant insurer had refused to sell him health insurance for himself and a minor son unless he also purchased health insurance for his wife. The court found that the McCarran-Ferguson Act applied, saying, "[t]he allegations in the plaintiff's complaint are the very essence of the relationship between insurer and policyholder. He has alleged that Blue Cross-Blue Shield has refused to offer the exact coverage that he prefers." *Id.* at 320.

4. In this aspect, the instant case differs factually from both *Dexter* and *Addrisi,* where the insurer and the lender were one and the same, and *Dixie Finance,* where the insurers and lenders were either the same or affiliated.

5. Of course, none of the conclusions reached in this Order bear on the ultimate question of whether the Sherman Act has been violated. "It is axiomatic that conduct which is not exempt from the antitrust laws may nevertheless be perfectly legal." *Royal Drug,* 440 U.S. at 210 n. 5, 99 S.Ct. at 1072 n. 5. In this connection see the Supreme Court's decision in *United States Steel Corp. v. Fortner Enterprises,* 429 U.S. 610, 97 S.Ct. 861, 51 L.Ed.2d 80 (1977) (*Fortner II*), and the dictates of Rule 11.