Zenovia **ELLIOTT**, on behalf of herself and all others similarly situated, Plaintiffs,

v.

**ITT CORPORATION**, formerly known as International Telephone & Telegraph Corporation; ITT Consumer Financial Corporation; Aetna Finance Company, doing business as ITT Financial Services, and formerly known as ITT Thorp Corporation; ITT Lyndon Life Insurance Company; and American Bankers Life Assurance Company of Florida, Defendants.

No. 90 C 01841.

United States District Court, N.D. Illinois, E.D.

March 15, 1991.

MEMORANDUM OPINION
AND ORDER

ASPEN, District Judge:

Defendants ITT Corp. ("ITT"), ITT Consumer Financial Corp. ("ITT Financial"), Aetna Finance Co. ("Aetna"), and ITT Lyndon Life Insurance Co. ("ITT Insurance"), a group that we will refer to collectively as the "ITT defendants," have moved to dismiss the three-count class action complaint filed by Zenovia Elliott. The complaint alleges violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968 (1988), the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601–1693 (1988), and the Illinois Consumer Fraud and Deceptive Business Practices Act, Ill.Rev.Stat. ch. 121 1/2, paras. 262–272 (1989). More specifically, Elliott complains of the ITT defendants' alleged practice of "insurance packing"—that is, the practice of "using unfair and deceptive means to induce the purchase of insurance in connection with consumer credit transactions." Complaint at 2. For the reasons set forth herein, we deny the motion.

I.

A motion to dismiss should not be granted unless it "appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *see also Ellsworth v. City of Racine,* 774 F.2d 182, 184 (7th Cir.1985), *cert. denied,* 475 U.S. 1047, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986). We take the "well-pleaded allegations of the complaint as true and view them, as well as all reasonable inferences therefrom, in the light most favorable to the plaintiff." *Balabanos v. North Am. Inv. Group, Ltd.,* 708 F.Supp. 1488, 1491 n. 1 (N.D.Ill.1988) (citing *Ellsworth*).

Cheryl G. Weiss, Lawrence Walner & Assoc., Chicago, Ill., Mark Reinhardt, Reinhardt & Anderson, St. Paul, Minn., for plaintiffs.

Robert P. Cummins, Kass A. Plain, Bickel & Brewer, Geraldine M. Alexis, Daniel S. Kelly, Mark Yeager, Sidley & Austin, Chicago, Ill., for defendants.

II.

On January 7, 1988, Elliott and her husband obtained a loan from ITT Financial in the amount of $3,096.00. The Elliotts declined to purchase the credit insurance of-

fered by ITT Financial. On January 13, 1988, the Elliotts and ITT Financial agreed on a method to refinance certain existing debts, including the January 7 loan. The new loan totaled $57,120.00, and the Elliotts secured it by taking a second mortgage on their Chicago home. Of the $26,-417.29 "amount financed," [1] nearly twenty percent paid for various insurance policies, including "credit life" insurance, "credit disability" insurance, and "income assistance" insurance. The Elliotts paid $5,163.00 for these assorted insurance policies.

The crux of Elliott's complaint is that neither she nor her husband requested, desired, or had any use for the insurance "packed" into their loan agreement with ITT Financial. As defined in the complaint, "insurance packing" is the practice "whereby amounts for the payment of premiums on 'optional' insurance products are added to the amount of a loan without the request of the customer and presented to the customer with pre-prepared loan documents at the closing of the loan." Complaint at 8. Elliott contends that ITT Financial included the various insurance policies in the loan documents prepared for the closing, and its representatives told her and her husband that "they had to take the insurance in order to obtain the loan." *Id.*

The ITT defendants argue in the main that Elliott's complaint must be dismissed because the McCarran–Ferguson Act, 15 U.S.C. §§ 1011–1015 (1988), specifically prohibits application of federal laws like RICO and TILA to the "business of insurance." We do not agree with defendants that Elliott's complaint fundamentally implicates or impinges on the business of insurance, and we therefore decline to dismiss the action.

### III.

■ In relevant part, the McCarran–Ferguson Act provides that:

(a) *State regulation*[:] The business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business.

(b) *Federal regulation*[:] No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, ... unless such Act specifically relates to the business of insurance....

15 U.S.C. § 1012(a), (b). Congress designed the McCarran–Ferguson Act to give broad "support to the existing and future state systems for regulating and taxing the business of insurance." *Prudential Ins. Co. v. Benjamin*, 328 U.S. 408, 429, 66 S.Ct. 1142, 1155, 90 L.Ed. 1342 (1946).

In determining whether ITT Financial's practices are exempt from RICO and TILA scrutiny as part of the business of insurance, we look to the Supreme Court's three-part test: 1) whether the practice has the effect of transferring or spreading a policyholder's risk; 2) whether the practice is an integral part of the policy relationship between the insurer and the insured; and 3) whether the practice is limited to entities within the insurance industry. *See Union Labor Life Ins. Co. v. Pireno*, 458 U.S. 119, 129, 102 S.Ct. 3002, 3009, 73 L.Ed.2d 647 (1982); *see also Group Life & Health Ins. Co. v. Royal Drug Co.*, 440 U.S. 205, 99 S.Ct. 1067, 59 L.Ed.2d 261 (1979).

There can be no doubt that the sale of an insurance policy is the business of insurance. *See, e.g., SEC v. National Sec., Inc.*, 393 U.S. 453, 89 S.Ct. 564, 21 L.Ed.2d 668 (1969); *FTC v. Dixie Finance Co.*, 695 F.2d 926, 930 (5th Cir.) (appendix A), *cert. denied*, 461 U.S. 928, 103 S.Ct. 2088, 77 L.Ed.2d 299 (1983). Where the particular activity under attack is, as here, the alleged misrepresentation that credit will be extended only when certain insurance is also purchased, however, it is not the business of insurance *per se* that is implicated. *Dixie Finance Co.*, 695 F.2d at 930 (appendix A). Elliott's complaint is plainly focused on the particulars of credit extension, and

---

**1.** The loan total of $57,120.00 included the amount financed and a finance charge of $30,-    702.71.

"[w]hile the offering of [insurance] policies in [the credit extension] setting may facilitate the sale of [those] policies, that alone does not elevate the activity to the 'business of insurance.'" *Id.* (citing *Perry v. Fidelity Union Life Ins. Co.,* 606 F.2d 468 (5th Cir.1979), *cert. denied,* 446 U.S. 987, 100 S.Ct. 2973, 64 L.Ed.2d 845 (1980)); *see also FTC v. Manufacturers Hanover Consumer Servs., Inc.,* 567 F.Supp. 992, 996 (E.D.Pa.1983).

Further, the relationship between the ITT defendants and Elliott at the root of the complaint is not the relationship between insurer and insured. The complaint plainly addresses the creditor-borrower relationship, and the propriety of connecting the sale of insurance as a prerequisite to the extension of credit. The " 'business of insurance' intrudes upon the business of financing only at the point at which the borrower or his lender deal with the insurer regarding the particulars of the policy being purchased." *Dixie Finance Co.,* 695 F.2d at 930 (citation omitted). The conduct alleged in the complaint does not relate to the defendants "as insurers, but as finance companies whose methods of inducing potential borrowers to purchase insurance is an integral part of the arrangement of credit and not the 'business of insurance.' " *Id.* at 931.

The specific cases cited by the ITT defendants to show that RICO claims in particular are barred by the McCarran–Ferguson Act are neither binding on this ·court nor particularly persuasive or relevant. As Elliott points out, defendants' RICO cases rather summarily assume that the "business of insurance" is at issue, and in fact make no attempt to apply the *Pireno* three-part test. *See Senich v. Transamerica Premier Ins. Co.,* No. 90–299, slip op. at 2–3 (W.D.Pa. Sept. 18, 1990) (finding that "RICO does not specifically relate to the business of insurance"); (*Richhart v. Metropolitan Life Ins. Co.,* No. 89–1725, 1990 WL 39268 (E.D.Pa. Mar. 30, 1990) (1990 U.S.Dist. LEXIS 3597) ("Plaintiffs do not dispute that the three prong test necessary to satisfy the McCarran–Ferguson Act has been met."). Here, we determine that for purposes of the motion to dismiss, it is the business of credit—not the business of insurance—at issue. The ITT defendants do not—and could not—contend that RICO is inapplicable to the business of credit, nor do they contend that the mail and wire fraud statutes are inapplicable. Dismissal of the RICO claim is thus inappropriate.

The ITT defendants' contention that TILA claims are barred by the McCarran–Ferguson Act is similarly unfounded. As noted above, the McCarran–Ferguson Act bar kicks in only where the "business of insurance" is implicated. Elliott's complaint does not implicate the business of insurance. Her TILA claim, like her RICO claim, is thus not barred. *Lowe v. Aarco-American, Inc.,* 536 F.2d 1160 (7th Cir. 1976), cited by the defendants, is not inapposite. There, the Seventh Circuit specifically determined that "the credit sale of insurance policies by an insurance broker and a premium finance company, constitutes part of the 'business of insurance' so as to be beyond the reach" of TILA. *Id.* at 1162. Our finding that the credit transaction at issue here is not the business of insurance renders *Lowe* irrelevant.

## IV.

Defendants also make certain technical objections to Elliott's TILA claim. When, as here, a consumer credit transaction results in a creditor acquiring a security interest in a borrower's residence, 15 U.S.C. § 1635(a) gives the borrower the

right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later....

15 U.S.C. § 1635(a). If the required notice of the right to rescind or the material disclosures are not, in fact, delivered, the right expires three years after consummation. 12 C.F.R. § 226.23(a)(3).

The ITT defendants argue that Elliott has not "request[ed] rescission in writing within the applicable time period," and has

thus "failed to fulfill the mandatory conditions precedent to bringing" a TILA rescission claim. ITT Memo at 11–12. The pertinent federal regulation requires that the borrower exercising the rescission right "notify the creditor of the rescission by mail, telegram or *other means of written communication.*" 12 C.F.R. § 226.23(a)(2) (emphasis added). Elliott contends that her complaint constitutes statutorily satisfactory notice, and at least one court has agreed. *Hunter v. Richmond Equity*, No. CV. 85–P–2734–S, slip op. at 9 (N.D.Ala. Nov. 23, 1987) ("The court finds, however, the complaint does satisfy the regulation's requirement that the notice be by means of 'written communication.' "). Absent stronger case authority than *James v. Home Constr. Co.*, 621 F.2d 727, 731 (5th Cir.1980), cited by defendants, we agree, too. *James* includes a vague statement that certain procedures related to a rescission request must be followed "before the matter can be brought to court." *Id.* As Elliott points out, however, just what the phrase "before the matter can be brought to court" means is unclear. Does it mean before a complaint can be filed, or before trial on the merits?

In any event, the ITT defendants did not succeed in bringing to our attention a case explicitly holding that filing of a complaint is not proper "written communication" sufficient to notify a creditor of a rescission claim, and we decline to make that finding without appropriate authority. And as to the defendants' claim that Elliott's complaint does not itself make a definite rescission demand, Elliott does request that ITT Financial be ordered "to rescind the transaction of each class member who elects rescission." Complaint at 28. That would seem to be abundantly clear for purposes of the motion to dismiss.

■ Defendants' other technical argument relates to the statute of limitations under 15 U.S.C. § 1640(e). Failure to comply with TILA's requirements can result in damage penalties equal to twice the finance charge. § 1640(a). That right, however, expires after one year; the limitations period begins to run on "the date of the occurrence of the violation...." § 1640(e); *see also Rudisell v. Fifth Third Bank*, 622 F.2d 243, 246 (6th Cir.1980). The right to rescind under § 1635 is not governed by § 1640(e)'s one year limitations period—indeed, § 1635(f) prescribes a three-year limitations period for rescission purposes. By the same token, however, Elliott "may have a right to rescind even though [her] claim for damages is barred by the statute of limitations in 15 U.S.C. § 1640(e)." *Rudisell*, 622 F.2d at 248.

Elliott's claim for damages stems from ITT's alleged refusal to accept her demand for rescission. This refusal is the "occurrence" following which, she argues, she has a full year to file a claim for damages. In its reply brief, ITT essentially concedes the point in its recognition that "[t]his contention is premised on the earlier argument that the complaint constitutes an adequate demand for rescission." ITT Reply Memo at 14. We have ruled that the complaint does, in fact, satisfy the statutory requirement for "written" notice, and it follows that ITT Financial's refusal to rescind may obligate it to pay damages under § 1640.

■ The defendants' claim that "the complaint seeks to advance the anomalous position that ITT received adequate notice of the demand *and* rejected that demand at the same moment," *id.* at 14–15 (emphasis in original), is not well-founded. The failure to rescind did not take on statutory significance until some time after Elliott's demand (via the complaint). *See* 15 U.S.C. § 1635(b) ("Within 20 days after receipt of a notice of rescission, the creditor shall return to the [borrower] any ... downpayment, ... and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction."). Thus, while a borrower may have a rescission claim but not a damage claim in certain circumstances, the circumstance here demonstrates that rescission and damage claims are not inherently exclusive.

## V.

The ITT defendants' motion to dismiss is denied. The McCarran–Ferguson Act does

not bar either a RICO or TILA claim where, as here, the crux of the complaint is not directed at the "business of insurance." Further, the defendants' specific TILA arguments are unavailing. It is so ordered.