LEWIS, C.J.
Appellant, the Department of Legal Affairs of the Office of the Attorney General, appeals the trial court’s order dismissing its amended complaint against Appellees, Beach Blvd. Automotive, Inc. (“BBA”), Beach Blvd. Auto Finance, Inc. (“BBAF”), John O. King, Sr., individually and as owner, officer, and/or director of the corporations, and Barbara King, individually and as an agent of BBA. For the reasons that follow, we affirm the trial court’s dismissal of Counts 1 and 8 along with the Florida Consumer Collection Practices Act (“FCCPA”) claim in Count 5, but reverse the dismissal of Counts 2, 3, 4, 6, 7, 9, and 10 along with the claim brought under the Florida Deceptive and Unfair Trade Practices Act (“FDUTPA”) in Count 5.
In October 2011, Appellant filed its initial complaint containing eight counts against Appellees[1] based upon their al *384 leged fraudulent and unfair trade practices. Appellees filed a motion to dismiss, which the trial court granted. In its order, the trial court found that Appellant lacked standing as the enforcing authority under FDUTPA. In providing guidance to Appellant in the event that it filed an amended complaint, the trial court determined that Appellant’s claim that Appel-lees improperly required their customers to purchase credit life, credit disability, and GAP insurance did not constitute a violation of FDUTPA. With respect to Appellant’s claim that Appellees improperly installed GPS devices in the financed vehicles they sold, the trial court found that only installation of GPS tracking devices without notification to the purchaser would support an allegation that such a practice was unfair or deceptive. The court noted that, for all purposes, the liti-. gation commenced on October 7, 2011, the date the original complaint was filed.
In its amended complaint, Appellant sought injunctive and declaratory relief, restitution, civil penalties, damages, attorney’s fees, and any other available statutory relief pursuant to FDUTPA and FCCPA. Appellant alleged ten counts and claimed that it was the enforcing authority under FDUTPA. It attached as Exhibit A a “Notice of Deferral of Action” from the State Attorney of the Fourth Judicial Circuit wherein the State Attorney deferred the litigation against Appellees to Appellant pursuant to section 501.203(2), Florida Statutes.
In Count 1, Appellant alleged a FDUT-PA violation, asserting that Appellees added credit life, credit disability, and GAP insurance to their customers’ monthly payments without proper or adequate disclosure. In Count 2, Appellant alleged a FDUTPA violation, asserting that Appel-lees placed GPS tracking devices on their vehicles without the authorization, approval, or knowledge of their customers. In Count 3, Appellant alleged a FDUTPA violation, asserting that Appellees deceived their customers by adding a pre-delivery inspection (“PDI”) fee to the price of their vehicles without disclosing the nature and purpose of the fee and without providing the proper disclosures, an alleged violation of sections 501.976(11) and (18), Florida Statutes. In Count 4, Appellant alleged a FDUTPA violation, asserting that Appel-lees kept their customers’ deposits or binders without adequate disclosure, an alleged violation of section 501.976(10), Florida Statutes. It also alleged that certain customers were led to believe that their deposits would be returned if they did not purchase vehicles from Appellees. In Count 5, Appellant alleged both FDUTPA and FCCPA violations, asserting that Ap-pellees BBAF and John O. King, Sr. willfully used threats and profane language with debtors and willfully claimed or threatened to enforce illegitimate debts. In Count 6, Appellant alleged a FDUTPA violation, asserting that Appellee Barbara King posted false reviews on internet websites. In Count 7, Appellant alleged a FDUTPA violation, asserting that Appel-lees also posted false reviews on internet websites. In Count 8, Appellant alleged a FDUTPA violation, asserting that Appel-lees engaged in the business of a motor vehicle retail installment seller without a license, an alleged violation of section 520.03(1), Florida Statutes. In Count 9, Appellant alleged a FDUTPA violation, asserting that Appellees wrongfully repossessed customers’ vehicles based on false assertions that the customers’ automobile insurance had lapsed or based on nonexistent liens. In Count 10, Appellant alleged a FDUTPA violation, asserting that Appellees reported false sales and financing.
Appellant attached several documents to its amended complaint, including sworn *385 statements of some of Appellees’ customers and employees, bills of sale and schedules of insurance containing language that credit life and credit disability insurance were optional items, a SAFE-GAP Deficiency Waiver Addendum providing in part that the purchase of the additional coverage was voluntary and would not be a factor in the credit approval process, and a December 9, 2011, letter to Appellee John 0. King, Sr. from the Office of Financial Regulation advising him that BBA’s application for licensure as a motor vehicle installment seller had been denied. Also attached was a receipt for one of Appel-lees’ customers that contained a stamp setting forth, “BBA AGREES TO HOLD ABOVE VEHICLE UNTIL'_ FOR NON REFUNDABLE BINDER OF
Appellee Barbara King filed an answer and affirmative defenses in response to the amended complaint. Appellees moved to dismiss the amended complaint. Appellant subsequently filed a final order of the Office of Financial Regulation with the trial court. The order incorporated a stipulation and consent agreement, which set forth that Appellees’ license as a motor vehicle retail installment seller became inactive in December 2010 for an “inadvertent failure to renew.” It also provided that Appellees operated “unintentionally” without a license from January 1, 2011, until April 30, 2012.
During the hearing on Appellees’ motion to dismiss, counsel for Appellee Barbara King stated that King had “no say” in the motion given that she had answered the amended complaint. Appellees’ counsel argued as to Count 1 that Appellant raised the same claim as it had raised in its original complaint.
As to Count 2, Appellees’ counsel argued, “We don’t have exceptions to [it] other than we feel that it misjoins some other general paragraphs .... So we’re not asking it to be dismissed with prejudice; we’re asking it be cleaned up a little bit.”
As to Count 3, Appellees’ counsel argued that res judicata barred the claim given that Appellees “previously settled the class action and [the court] issued a final order on May 10 of 2011.” According to counsel, it was alleged in the class action that Ap-pellees violated FDUTPA, and all class members released Appellees from any and all liability arising out of the PDI fee. Appellant’s counsel acknowledged that the class members received actual damages for Appellees’ PDI fee violation but noted that it was “seeking ... an enforcement or damages based on an enforcement action .... ” Counsel offered to “remove the actual damages language from there” and asked that Appellant be permitted to move forward with regard to it receiving damages “based on a violation of 501 as an enforcement agency.”
With respect to Count 4, Appellees’ counsel argued that the nonrefundable deposit language used by Appellees complied with the pertinent statutes. Appellant’s counsel argued that the “binder stamp” did not give consumers a clear and conspicuous statement as to when a deposit was refundable or nonrefundable as required by section 501.976, Florida Statutes.
As to Count 5, Appellees’ counsel argued that the claim should be dismissed with prejudice because Appellant did not have authority to pursue a FCCPA claim. Appellant’s attorney argued that the deferral letter from the State Attorney gave Appellant enforcement jurisdiction to “go after any of the acts that are within the complaint.” .
After noting that Count 6 could be skipped given that it dealt with Appellee *386 Barbara King, Appellees’ counsel represented that Appellees would “forego” their motion to dismiss as to Count 7 and “go ahead and answer that count .... ”
As to Count 8, Appellees’ counsel represented that Appellees’ motor vehicle retail installment sales license had been reinstated on a probationary basis.
With respect to Count 9, Appellees’ counsel stated in part, “We would ask that [Appellant] restate the count primarily to identity who it is seeking damages from because ... this count is asking for damages for consumers who have been aggrieved, but it doesn’t tell us who has been aggrieved.”
As to Count 10, Appellees’ counsel argued that the trial court had previously discussed the issue when Appellant unsuccessfully sought the sales agreements of family members and friends of Appellee John 0. King, Sr. Appellant’s counsel asserted that the claim pertained not only to those individuals, but also to other consumers or business enterprises that were affected by Appellees’ actions in falsifying documents for the purpose of sale.
Thereafter, the trial court entered the Order Dismissing Amended Complaint, setting forth the following:
The Court, being fully advised in the premises, finds that the allegations of the Amended Complaint fail to state a cause of action. Additionally, the Attorney General lacks standing to bring civil actions under certain provisions cited as authority in the Amended Complaint. Further, many of the allegations of the Amended Complaint are barred by the statute of limitations. Also, the Complaint has previously been dismissed for the same reasons cited above, with leave to amend. The Amended Complaint cures none of the deficiencies of the original Complaint. In fact, Count I of the original Complaint was dismissed with prejudice; notwithstanding that fact, the Amended Complaint restates the same claims that were alleged in Count I of the original Complaint.
This appeal followed.
A motion to dismiss raises a question of law as to whether the facts alleged in the complaint are sufficient to state a cause of action. Rhea v. Dist. Bd. of Trs. of Santa Fe Coll., 109 So.3d 851, 854 (Fla. 1st DCA 2013). When considering the legal sufficiency of a complaint, a trial court’s view is limited to the four corners of the complaint, and the factual allegations contained therein are to be accepted as true. Id. A trial court must resolve all reasonable conclusions or inferences in favor of the plaintiff, as the non-moving party. Id.; Wells Fargo Bank, N.A. v. Bohatka, 112 So.3d 596, 600 (Fla. 1st DCA 2013) (explaining that a court’s review of a motion to dismiss is limited to the four corners of the complaint and to any documents attached or incorporated thereto). A trial court’s order dismissing a complaint for failure to state a cause of action is reviewed de novo. Andrew v. Shands at Lake Shore, Inc., 970 So.2d 887, 889 (Fla. 1st DCA 2007).
FDUTPA prohibits “[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce.” § 501.204(1), Fla. Stat. (2011). The term “trade or commerce” as used in section 501.204(1) is defined as “advertising, soliciting, providing, offering, or distributing whether by sale, rental, or otherwise, of any good or service, or any property ... or any other article, commodity, or thing of value, wherever situated.” § 501.203(8), Fla. Stat. (2011). An unfair action under FDUTPA is an act that offends established public policy and one that is substantially injuri *387 ous to consumers, unscrupulous, oppressive, unethical, or immoral. PNR, Inc. v. Beacon Prop. Mgmt., Inc., 842 So.2d 773, 777 (Fla.2003). Deception occurs if there is a representation, omission, or practice that is likely to mislead consumers acting reasonably in the circumstances, to the consumers’ detriment. Id.
The enforcing authority under FDUTPA is “the office of the state attorney if a violation of this part occurs in or affects the judicial circuit under the office’s jurisdiction” or the “Department of Legal Affairs if the violation occurs in or affects more than one judicial circuit or if the office of the state attorney defers to the department in writing ....” § 501.203(2), Fla. Stat. (2011). The enforcing authority may bring an action to obtain a declaratory judgment that an act or practice violates the law, an action to enjoin a person who has violated, is violating, or is likely to violate the law, or an action on behalf of one or more consumers or governmental entities for the actual damages caused by an act or practice in violation of the law. § 501.207(1)(a)-(c), Fla. Stat. (2011). A FDUTPA action may not be brought more than four years after the occurrence of a violation or more than two years after the last payment in a transaction involved in a violation of the law. § 501.207(5), Fla. Stat. (2011).
Appellant first argues on appeal that the trial court erred in dismissing the amended complaint based on its finding that Appellant was not the enforcing authority under FDUTPA. Appellees correctly acknowledge that Appellant is the enforcing authority under FDUTPA based upon the State Attorney’s deferral. Therefore, to the extent that the trial court dismissed the amended complaint on this basis, it erred in doing so.
Appellant next contends that the trial court erred in dismissing the amended complaint based on its finding that many of Appellant’s allegations were barred by the statute of limitations. We agree. While Appellees are correct that anything that occurred prior to October 7, 2007, would not be actionable under FDUTPA, the trial court’s characterization that “many” of Appellant’s allegations are barred by the statute of limitations is inaccurate. Only two allegations within the amended complaint referred to time periods outside the four-year statute of limitations and did so only generally. As such, dismissal on this basis was improper.
In its third and final issue oh appeal, Appellant addresses the dismissal of each count separately. We will do the same.

Count 1 (Payment Packing)

We agree with Appellant that the trial court erred in finding that Count 1 of the amended complaint simply restated the allegations contained in Count 1 of the original complaint. In its original complaint, Appellant alleged that Appellees improperly required the purchase of credit life, credit disability, and GAP insurance as a condition of the sale of their vehicles. In contrast, Appellant alleged an unfair or fraudulent act in Count 1 of its amended complaint by alleging that Appellees added those optional items to their customers’ monthly payments without disclosing the items to them.
With that said, however, FDUTPA does not apply to “[a]ny person or activity regulated under laws administered by [t]he Office of Insurance Regulation of the Financial Services Commission” or “[a]ny person or activity regulated under the laws administered by the former Department of Insurance which are now administered by the Department of Financial Services.” § 501.212(4)(a), (d), Fla. Stat. (2011). Florida courts resolve questions about the applicability of section 501.212(4) by look *388 ing to the activity that is the subject of the lawsuit and determining whether the activity is subject to the regulatory authority of the Office of Insurance Regulation. State Farm Mut. Auto. Ins. Co. v. Physicians Injury Care Ctr., 427 Fed.Appx. 714, 728 (11th Cir.2011).
In support of its argument that the exemptions do not apply in this case, Appellant cites Federal Trade Commission v. Dixie Finance Co., 695 F.2d 926 (5th Cir.1983). There, the Fifth Circuit explained that the purpose of the investigation by the Federal Trade Commission in the case was to determine whether finance companies, automobile dealerships, or others were engaged in unfair or deceptive acts or practices in connection with arranging for or consummating a consumer credit transaction, including misrepresenting, directly or by implication, that the purchase of credit insurance was a prerequisite to the extension of credit. 695 F.2d at 928. The respondents failed to provide the requested documents on the ground that the Commission’s inquiry was an unlawful attempt to investigate and regulate the “business of insurance,” which is protected by the McCarran-Ferguson Act; the pertinent provision of the Act provided that the “business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business.” Id. The Fifth Circuit explained that the respondents were consumer finance companies that sold life, health, and accident insurance to their loan customers. Id. The Commission argued that the “business of insurance” was not involved because an insurance policy was only tangentially involved and because none of the elements of the insurer-insured relationship were being scrutinized by the Commission. Id. at 929. The Fifth Circuit agreed with the Commission, reasoning, “It is not the actual sale, but the fact that the sale is a precondition to the extension of credit that is critical here. Were the Commission attempting to investigate the sale of these policies, clearly the state statutes ... would govern and the McCar-ran Act exemption would apply.” Id. at 930. In affirming the order compelling the respondents to provide documentary evidence to the Commission, the Fifth Circuit set forth, “[T]he relationship ... is not the relationship between insurer and insured [that the Commission wanted to investigate]. It is the credit relationship that the Commission is concerned with; specifically, whether the sale of insurance is a precondition to the arrangement of credit.” Id. (emphasis in original). See also Elliott v. ITT Corp., 764 F.Supp. 102, 104 (N.D.Ill.1991) (noting that while there is no doubt that the sale of an insurance policy is the business of insurance, “[w]here the particular activity under attack is, as here, the alleged misrepresentation that credit will be extended only when certain insurance is also purchased, however, it is not the business of insurance ... that is implicated” and finding that the plaintiffs complaint was plainly focused on the particulars of credit extension).
We find Appellant’s reliance upon Dixie Finance Co. misplaced. Section 501.212(4) exempts from FDUTPA “[a]ny person or activity regulated under laws administered” by the Office of Insurance Regulation or the laws administered by the former Department of Insurance which are now administered by the Department of Financial Services. This language is broader than the “business of insurance” language at issue in Dixie Finance Co. Moreover, unlike the situation in Dixie Finance Co. where the sale of insurance was a precondition to the arrangement of credit, Appellant alleged that Appellees added credit life, credit disability, and GAP insurance to their customers’ transac *389 tions without the customers’ knowledge. As such, the alleged activity in this case deals with the insurance itself.
Our conclusion is supported by the statutes regulating the type of insurance at issue. Section 516.35, Florida Statutes (2011), which is entitled “Credit insurance must comply with credit insurance act,” addresses in subsection (2) how the costs of credit property, credit life, and credit disability insurance must be disclosed. Section 626.321(1)(e), Florida Statutes (2011), provides that the Department of Financial Services shall issue a qualified applicant a license as an agent authorized to transact a limited class of business in credit insurance. Section 627.678(1), Florida Statutes (2011), provides that “[f]or the effective protection of the public interest, the commission [the Financial Services Commission] shall have full power and authority to adopt, and the office [Office of Insurance Regulation] shall enforce, separate rules pertaining to issuance and use of each type of credit insurance defined in s. 627.677.” Section 627.679, Florida Statutes (2011), provides for the amount that may be charged for credit life and credit disability insurance, and section 627.681, Florida Statutes (2011), provides for the term of credit life and credit disability insurance. Section 627.683, Florida Statutes (2011), which also pertains to credit life and credit disability insurance, sets forth, “All policies to which this chapter applies shall be issued through a licensed agent.” Not only do the foregoing provisions refute Appellant’s argument that Ap-pellees’ act of selling credit life and credit disability insurance is not exempted from FDUTPA under section 501.212(4), but Appellant’s counsel acknowledged during the hearing below that Appellee BBA “sells an insurance product.” In' addition, Appellees’ counsel provided the trial court with a copy of Appellees’ license to sell insurance.
In assessing the dismissal of Count 1, we are also guided by the fact that Appellant attached to its amended complaint Appellees’ schedules of insurance, which provided in part:
I(We) understand that the insurance applied for herein is not compulsory, nor a condition precedent to any loan or credit transaction. I(We) hereby state that I(we) have been given the option to purchase such credit insurance or other insurance from any insurer or agency of my (our) choice and that I(we) freely choose Life of the South Insurance Company.
A bill of sale issued by Appellees included a section entitled “OPTIONAL CREDIT LIFE AND DISABILITY INSURANCE DISCLOSURE.” The form stated in part, “Credit Life Insurance and Credit Disability Insurance are not required to obtain credit and will not be provided unless you agree to pay the additional cost by signing below.” As Appellees argue, when an exhibit negates a cause of action, the exhibit’s plain language controls and may be the basis for a motion to dismiss. Fladell v. Palm Beach Cnty. Canvassing Bd., 772 So.2d 1240, 1242 (Fla.2000); see also Southworth & McGill, P.A. v. S. Bell Tel. & Tel. Co., 580 So.2d 628, 631 (Fla. 1st DCA 1991). We agree with Appellees that the cited language negates Appellant’s allegations that Appellees added credit life and credit disability insurance without authorization or disclosure.
While Appellant is correct that section 520.02(7), Florida Statutes (2011), provides that GAP coverage is not insurance for purposes of the Florida Insurance Code and that, as a result, the exemptions in section 501.212(4) would not apply to the sale of the item, Exhibit G to the amended complaint included a SAFE-GAP Deficien *390 cy Waiver Addendum for one of Appellees’ customers. The form provided in part:
THE PURCHASE OF THE DEFICIENCY WAIVER ADDENDUM IS VOLUNTARY, WILL NOT BE A FACTOR IN THE CREDIT APPROVAL PROCESS AND NEITHER THE EXTENSION OF CREDIT, THE TERMS OF THE CREDIT, NOR THE TERMS OF THE RELATED MOTOR VEHICLE SALE OR LEASE, MAY BE CONDITIONED UPON THE PURPOSE OF THE GAP WAIVER.
The “OPTIONAL CREDIT LIFE AND DISABILITY INSURANCE DISCLOSURE” language was also included on the form. For these reasons, we affirm the order as to the dismissal of Count 1.

Count 2 (GPS Devices)

We agree with Appellant that Count 2 of the amended complaint was improperly dismissed. The trial court correctly noted in its order dismissing the original complaint that the installation of GPS tracking devices without notification to the purchaser would support an allegation that such a practice was unfair or deceptive. Not only did Appellant allege in its amended complaint that Appellees installed the devices on cars they sold without their customers’ knowledge or authorization, but Appellees’ counsel stated during the hearing that he did not take exception to the substance of the claim. Given such, we reverse the order as to the dismissal of Count 2.

Count 3 (PDI Fee)

Appellant correctly argues that Count 3 was improperly dismissed. While Appellees argue that dismissal was appropriate because Appellant’s claim was barred under the doctrine of res judicata, a defendant generally cannot raise the defense of res judicata for the first time in a motion to dismiss. Britt v. City of Jacksonville, 770 So.2d 257, 257-58 (Fla. 1st DCA 2000). Where the basis for res judi-cata or collateral estoppel does not appear on the face of a complaint, those grounds cannot be determined by way of a motion to dismiss. Garnac Grain Co., Inc. v. Mejia, 962 So.2d 408, 410 (Fla. 4th DCA 2007). Cf. Duncan v. Prudential Ins. Co., 690 So.2d 687, 688 (Fla. 1st DCA 1997) (affirming the dismissal of the complaint and noting that although the defenses of res judicata and estoppel by judgment are affirmative defenses which ordinarily cannot be raised by a motion to dismiss, the appellant specifically incorporated the previous proceedings into her complaint by reference, thereby providing the trial court a complete history of the litigation). Ap-pellees represent on appeal that they notified the trial court of the prior litigation between them and their customers. By doing so, they acknowledge that Appellant did not refer to the litigation in its amended complaint. Accordingly, we reverse the order as to the dismissal of Count 3.

Count 4 (Deposits)

Appellant correctly argues that the trial court erred in dismissing Count 4 of the amended complaint. As alleged by Appellant, it is an unfair or deceptive practice and actionable under FDUTPA for an automobile dealer to:
[r]equire or accept a deposit from a prospective customer prior to entering into a binding contract for the purchase and sale of a vehicle unless the customer is given a written receipt that states how long the dealer will hold the vehicle from other sale and the amount of the deposit, and clearly and conspicuously states whether and upon which conditions the deposit is refundable or nonrefundable.
§ 501.976(10), Fla. Stat. (2011). Appellees argue that dismissal was appropriate as to *391 Count 4 because the stamp they used to inform customers that them binders or deposits were nonrefundable fully satisfied the statutory requirements as a matter of law. While the stamp that was included in Exhibit K to the amended complaint set forth that Appellee BBA agreed to hold a vehicle until a certain date for a “non refundable binder,” Appellant alleged in its amended complaint that the stamp did not fully satisfy section 501.976(10) because it did not clearly and conspicuously state whether and upon what conditions the deposit was refundable or nonrefundable. It also alleged that, notwithstanding the stamp, Appellees’ customers were led to believe that they would receive their deposits back if they did not purchase a vehicle. These allegations were sufficient to withstand Appellees’ motion to dismiss. We, therefore, reverse the order as to the dismissal of Count 4.

Count 5 (Debt Collection)

In Count 5, Appellant alleged that Appellees violated both FCCPA and FDUTPA by engaging in certain debt collection practices. As to its authority to bring a FCCPA claim, Appellant cites Section 559.725 of FCCPA, which is entitled “Consumer complaints; administrative duties” and provides in part:
(1) The office [Office of Financial Regulation] shall receive and maintain records of correspondence and complaints from consumers concerning any and all persons who collect debts, including consumer collection agencies.
(2) The office shall inform and furnish relevant information to the appropriate regulatory body of the state or the Federal Government, or The Florida Bar in the case of attorneys, if a person has been named in a consumer complaint pursuant to subsection (3) alleging violations of s. 559.72. The Attorney General may take action against any person in violation of this part.
(3) The complainant, subject to penalty of perjury as provided in s. 837.06, shall certify on a form approved by the Financial Services Commission a summary of the nature of the alleged violation and the facts that allegedly support the complaint, and shall submit the form to the office.
(4) The office shall investigate complaints and record the resolution of such complaints.
(5) The office shall advise the appropriate state attorney or the Attorney General of any determination by the office of a violation of this part by any consumer collection agency that is not registered as required by this part. The office shall furnish the state attorney- or Attorney General with the office’s information concerning the alleged violations of such requirements.
(Emphasis added).
As Appellees contend, Appellant did not rely upon subsection (2) in the trial court. Instead, Appellant incorrectly relied upon the State Attorney’s letter deferring its FDUTPA enforcement authority to it. Because Appellant failed to bring section 559.725(2) to the trial court’s attention, we decline to address the applicability of the provision to Appellant in this case and affirm the dismissal of the FCCPA claim in Count 5. See Aills v. Boemi, 29 So.3d 1105, 1108 (Fla.2010) (noting that a party must state a legal ground for an objection, and in order for an argument to be cognizable on appeal, it must be the specific contention asserted as legal ground for the objection, exception, or motion below).
Within Count 5, Appellant also asserted a FDUTPA claim based upon Appellees’ allegedly unfair and deceptive debt collection practices. In Schauer v. General Motors Acceptance Corp., 819 So.2d 809, 811 *392 (Fla. 4th DCA 2002), the appellant appealed the dismissal of his complaint wherein he alleged FDUTPA and FCCPA claims against the appellees. The case arose from the sale of a used car by appellee Ed Morse Chevrolet to the appellant’s stepdaughter; the appellant was a co-signer to the loan. 819 So.2d at 811. In reversing as to the dismissal of the FDUTPA claim, the Fourth District determined that the appellant was a “consumer” and that the actions of appellee GMAC by extending credit fell within FDUTPA’s broad definition of “trade or commerce.” Id. at 812. The Fourth District set forth, “As [the appellant] alleged sufficient facts to show GMAC violated this Act by willfully harassing him and his family with respect to the collection of its debt, this cause of action should have survived dismissal.” Id. In construing Schauer, this Court has explained, “The plaintiff also connected the seller with GMAC through agency allegations. In other words, there appeared to be a ‘trade or commerce’ relationship between GMAC and the plaintiff before GMAC attempted to collect the debt through means unconnected to the legal process.” See Baker v. Baptist Hosp. Inc., 115 So.3d 1123, 1125 (Fla. 1st DCA 2013); see also F.T.C. v. Check Investors, Inc., 502 F.3d 159, 174 (3d Cir.2007) (noting that the deceptive acts or practices forbidden by the Federal Trade Commission Act include those used in the collection of debts); Losure v. Capital One Servs., Inc., No. 2:05CV502FTM29SPC, 2006 WL 166520, at *1-3 (M.D.Fla. Jan. 23, 2006) (noting that defendant Capital One retained defendant NCO to collect the discounted portion of the debt at issue and determining that the plaintiff, a credit card holder, adequately pled a claim under FDUTPA where he alleged that NCO, with the knowledge that the debt was satisfied, attempted to collect the debt by willfully harassing him at home and at his place of employment through letters and telephone calls). Compare Williams v. Nationwide Credit, Inc., 890 F.Supp.2d 1319, 1321 (S.D.Fla.2012) (holding that the defendant was not engaged in trade or commerce under FDUTPA in making debt collection calls to the plaintiff).
We agree with Appellant that the trial court erred in dismissing the FDUT-PA claim contained in Count 5. By alleging that Appellees BBAF and John O. King, Sr., both individually and as the owner, officer and/or director of both BBA and BBAF, willfully used threats or threatened force or violence in their debt collection and willfully claimed or threatened to enforce illegitimate debts, Appellant, like the appellant in Schauer, alleged sufficient facts under FDUTPA to withstand a motion to dismiss. We, therefore, reverse the order as to the dismissal of Appellant’s FDUTPA claim in Count 5.

Count 6 (Appellee Barbara King’s Alleged False Positive Reviews)

As Appellant argues and as Ap-pellees concede, the trial court’s dismissal of Count 6 was improper because Appellee Barbara King did not move to dismiss the amended complaint but instead filed an answer and affirmative defenses. We, therefore, reverse the order as to the dismissal of Count 6.

Count 7 (Appellees’ Alleged False Positive Reviews)

As Appellant argues and as Ap-pellees again concede, the trial court erred in dismissing Count 7 given the fact that Appellees’ counsel represented below that Appellees were foregoing the motion to dismiss as to the count and would instead respond to Appellant’s allegations. As *393 such, reversal as to the dismissal of Count 7 is appropriate.

Count 8 (Licensure)

Section 520.03(1), Florida Statutes (2011), prohibits a person from engaging “in the business of a motor vehicle retail installment seller or operating] a branch of such business without a license.” Although Appellant alleged that Appellees violated FDUTPA by operating as an unlicensed seller, we agree with Appellees that dismissal was appropriate as to this count because Appellant failed to sufficiently plead how the alleged violation caused actual damages to consumers. In order to assert a claim for damages under FDUT-PA, a plaintiff must establish: (1) a deceptive act or unfair practice, (2) causation, and (3) actual damages. Baker, 84 So.3d at 1204. In Baker, we held that the class representative lacked standing to represent the class in its FDUTPA claim for damages against the appellant because he did not suffer any actual damages as a result of the imposition or payment of the lien at issue. Id. at 1205; see also Shibata v. Lim, 133 F.Supp.2d 1311, 1317 (M.D.Fla.2000) (noting that to state a cause of action under FDUTPA, the consumer must allege sufficient facts to show that the consumer has been actually aggrieved by the unfair or deceptive act committed by the seller in the course of trade or commerce); City First Mortg. Corp. v. Barton, 988 So.2d 82, 86 (Fla. 4th DCA 2008) (explaining that a plaintiff in a FDUTPA action may recover “only ‘actual damages’ incurred ‘as a consequence of a violation of the statute’ ”).
We find no merit in Appellant’s argument that it properly pled damages pursuant to section 520.12(2), Florida Statutes (2011), which provides in part that “[i]n the case of a willful violation of this part with respect to any retail installment sale, the buyer may recover from the person committing such violation ... an amount equal to any finance charge and any fees charged to the buyer by reason of delinquency, plus attorney’s fees and costs _” Not only is this provision not contained within FDUTPA, but Appellant did not cite the provision in its amended complaint as a basis for damages or allege that the sought-after damages were based upon finance charges or fees as a result of delinquency.
In affirming as to the dismissal of Count 8, we are mindful that Appellant also sought injunctive relief and civil penalties in the count. As section 501.207(1) provides, the enforcing authority may bring an action under FDUTPA for a declaratory judgment, for an injunction, or for actual damages on behalf of consumers. However, not only does it appear from the record that Appellees are now acting under a probationary license pending the outcome of this case, but Appellant also filed a final order of the Office of Financial Regulation with the trial court. That order set forth that Appellees’ act of operating without a license was done unintentionally due to their inadvertent failure to renew their license. Given such, we see no remaining remedy available to Appellant at this point under FDUTPA based upon its allegations in Count 8. We, therefore, affirm the dismissal of this count.

Count 9 (Wrongful Repossession)

Appellant correctly argues that the trial court erred in dismissing Count 9. Appellees assert on appeal that while they have no objection to remanding the case on this count as to the three named consumers in the amended complaint, Appellant cannot pursue additional claims under the count unless and until it identifies other allegedly affected individuals by name. However, as Appellees acknowledge, we have previously rejected the argument *394 that Appellant, as the enforcing authority-under FDUTPA, is required to name those consumers on whose behalf it is litigating a FDUTPA action. See Taubert v. State, Office of the Attorney Gen., 79 So.3d 77, 79 (Fla. 1st DCA 2011) (rejecting the appellant’s argument that the trial court erred in denying his motion to dismiss the underlying complaint because the appellee (Appellant in this case) failed to provide the names of the defrauded consumers in its FDUTPA action). As such, we reverse the order as to the dismissal of Count 9.

Count 10 (Reporting False Sales)

Appellant correctly argues that the trial court erred in dismissing Count 10. Although Appellees contend that dismissal was appropriate because Appellant failed to allege how any particular entity or customer was aggrieved as a result of the alleged conduct, Appellees’ premise that Appellant had to plead and prove actual damages in order to bring a FDUT-PA claim is flawed. As we explained herein, Appellant, as the enforcing authority under FDUTPA, is permitted to seek declaratory relief, injunctive relief, or actual damages. It may also seek civil penalties. For purposes of Count 10, Appellant sought injunctive relief and civil penalties. As such, we reverse the order as to the dismissal of this count.
In conclusion, we affirm the trial court’s dismissal of Counts 1 and 8 and the FCCPA claim in Count 5, but reverse the dismissal of Counts 2, 3, 4, 6, 7, 9, and 10 and the FDUTPA claim in Count 5.
AFFIRMED in part; REVERSED in part; and REMANDED for further proceedings.
WOLF and MAKAR, JJ„ Concur.

. When used herein, "Appellees” refers to BBA, BBAF, and John O. King, Sr. Appellee Barbara King will be referred to as such.