PER CURIAM.
E-Racer Tech, LLC (d/b/a Clean It PC) (E-Racer) and James Veser (Veser) appeal a non-final trial court order granting the appellee, Office of the Attorney General, Dep’t. of Legal Affairs’ (AG) motion for temporary injunctive relief and an order to freeze assets. We conclude that appellants have not shown the trial court erred on the law or abused its discretion in issuing these orders and affirm. We write to address some of the issues raised in this appeal.
The AG filed a complaint against appellants pursuant to the Florida Deceptive and Unfair Trade Practices Act (FDUT-PA), section 501.201-501.213, Florida Statutes (2015), seeking injunctive relief, restitution, civil penalties, attorney’s fees, and other equitable relief. The AG alleged unfair, deceptive and unconscionable business practices by appellants in the operation of an inbound call center and sale of unnecessary and costly technical support services and products to consumers “lured to contact the E-Racer call center through *1109 deceptive internet marketing tools.” This was allegedly accomplished through a partnership with Matomy USA. The AG alleged that E-Racer, owned by Veser, exploited consumer fears about viruses, malware,, and other security threats to their computers. The company allegedly targeted potential consumers aged fifty-five years and older, believed to be less sophisticated in computer technology.
..The AG moved for temporary injunc-tive relief and. an order freezing assets pursuant to FDUTPA, which the trial court granted after thirteen days of hearing. The trial court found that the AG’s witnesses, including two consumers, one former E-Racer employee, one expert witness and the AG investigator, were “credible and convincing” and that the defendants/appellants’ witnesses “were less than credible on the witness stand, ... appeared biased, gave evasive answers, made contradictory and implausible statements, and seemed unable to respond to allegations of misleading and deceptive business practices under FDUTPA.”
The trial court said: “[i]n this case, equity favors the injured consumers over Defendants who did the injuring.” It ruled that appellants had engaged in misleading and deceptive sales tactics and that their practices were likely to deceive consumers acting reasonably. The court also concluded that the AG had a clear legal right to the injunction and asset freeze and that it had shown a substantial likelihood of success on the merits of this action.
A trial court’s ruling on a motion for temporary injunction is presumed correct and will be reversed “only upon a showing of a clear abuse of discretion or clearly improper ruling.” M.G.K. Partners v. Cavallo, 515 So.2d 368, 369 (Fla. 4th DCA 1987); see also Meadows v. Med. Optics, Inc., 90 So.3d 924, 925 (Fla. 4th DCA 2012) (“This court reviews a temporary injunction under' a mixed standard of review. To the extent the trial court’s order is based on factual findings, we will not reverse unless the' trial court abused its discretion; however, any legal- conclusions are subject to de novo review.”) (citation and quotation omitted)).
We reject appellants’ argument that the temporary injunction order is facially defective because it provides insufficient and inconsistent directions. An injunction is invalid if it does not specify the acts enjoined with reasonable definition and clarity. F.V. Invs. N.V. v. Sicma Corp., 415 So.2d 755 (Fla. 3d DCA 1982). Florida Rule of Civil Procedure 1.610(c) provides that an injunction “shall describe in reasonable detail the act or acts restrained without reference to a pleading or another document ...” Here, appellants argue the order requires that they continue to service customers but does not describe the parameters of that conduct. ■
They further claim the order requires them to work but prohibits collection of service fees in accord with their service contracts, thus requiring them to work for no compensation and with no revenue to fund operations. The order requires appointment of a monitor but does not direct who it will be, how the monitor is to be compensated, describe the responsibilities of the monitor or state how the monitor “will interface with business operations.”
We conclude the temporary injunction order is sufficiently clear that appellants should know what they are enjoined from doing without having to speculate or guess. Paragraph 29 enjoins appellants from marketing, engaging and rendering services other than as necessary to perform contracts already executed or' services engaged prior to the injunction order. It enjoins them from “[cjharging, collecting or accepting any payments from consumers relating to remote tech support services.”
*1110 Appellee AG points out that the order’s exception allows appellants to service existing customers who already paid appellants,- for example in a one-year service plan. . Appellants could return to the trial court by motion seeking guidance on issues relating to enforcement of the injunction. However, they have failed to demonstrate that the order is legally insufficient as a matter of law.
Appellants next challenge the portion of the order freezing assets, requiring appellants to deposit $500,000 into the Department of Legal Affairs Revolving Escrow Account “to ensure the availability of funds for . consumer restitution, subject to modification by this Court.” They claim there was no evidence of record that they ever had this sum in their possession or the ability to pay it. However, the record included evidence that appellants’ revenue was $3.7 million with net income of $390,000 in 2014, and that they had more than 25,000 individual paying customers. Prior to the injunction, appellants had 2,000 customers under contract for “maintenance” service at a monthly charge of $25 or more if they purchased services or software.
In an equitable enforcement action seeking to freeze the defendants’ assets, the defendants are liable to the extent of their ill-gotten gains, that being revenue and not net profit. FTC v. IAB Mkt. Assoc., . LP, '972 F.Supp.2d 1307, 1312 (S.D.Fla.2013). In SEC v. Calvo, 378 F.3d 1211 (11th Cir.2004), the Eleventh Circuit said that only a “reasonable approximation of a defendant’s ill-gotten gains [is required.] , ... Exactitude is not a requirement.” Id. at 1217.
: Appellants have not shown an abuse of discretion on this point. If they are unable to comply with this requirement, they can return to the trial court with a motion to modify and post a lesser sum.
To the extent appellants claim that the AG failed to issue a written determination that the temporary injunction is in the public interest, the AG points out that Florida Attorney General Pamela Jo Bondi signed a Determination of Public Interest the day before the complaint was filed.
Appellants further argue trial court error in determining appellee AG’s likelihood of success on the merits. The AG does not have to establish irreparable harm, lack of an adequate legal remedy, or public interest as ordinarily required for a temporary injunction, since Section 501.207 authorizes the enforcing authority to seek injunctive relief. The AG needs only to demonstrate a substantial likelihood of success on the merits. Millennium Commc’ns & Fulfillment, Inc. v. Office of the Attorney Gen., 761 So.2d 1256, 1260 (Fla. 3d DCA 2000).
At the temporary injunction hearings, the AG presented two live witnesses and eleven consumer affidavits, as well as recordings of several telephone sales calls to show deceptive conduct by appellants. The temporary injunction order referred to email messages reflecting that defendant Veser directed the Matomy company to use “pop-up virus” advertisements. As well, witness Thiago de Sousa, an officer of E-Racer, testified on cross-examination that Matomy “was bundling advertisements with adware; consumers woulcj see the pop-up advertisement, believe it to be a warning or infection, call the number on their screen, and E-Racer would then convince the consumer to purchase a service that would purportedly remove the adware on their computer.”
The trial court found that Matomy placed the adware on the consumers’ computers in order to generate calls to E-Racer. The court said, “Essentially, E-Racer contracted with Matomy to place adware on consumer’s computers] for the *1111 end goal of having that consumer pay E-Racer hundreds of dollars to purportedly remove the adware.” Further, the trial court found that it was clear from de Sousa’s cross-examination that “consumers were not aware that, in calling the number on their computer screen, they were responding to an advertisement.”
Additional evidentiary support included an affidavit of a representative from the Office of the Attorney General, Consumer Protection Division, stating that the office had received seven complaints regarding the business practices of E-Racer. Consumers alleged they were driven to call E-Racer due to pop-ups or warnings notifying them of problems with their computers, often locking the computers from further use and providing a telephone number for assistance. Consumers alleged E-Racer used scare tactics and that , the programs E-Racer used for repair were available free online, yet they were charged for them. One consumer alleged he or. she believed the representative on the telephone was from Microsoft, when in fact he was from E-Racer. Three of the seven complainants said their relatives had been scammed or deceived by E-Racer. The affidavits of the consumers recited their experiences with E-Racer, where ■ they were solicited to buy computer repair services and their computers had pop-ups leading them to the company. The actions of the company were recited in greater detail.
The standard of review on appeal does not call for a reweighing of the evidence. Instead, it asks whether the trial court abused its discretion. Appellant did not demonstrate such an abuse. We reject appellants’ remaining challenges on their merit without the need for further discussion.

Affirmed.

TAYLOR, LEVINE and . KLINGENSMITH, JJ„ concur.