DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**OUTREACH HOUSING, LLC,** and **BLAIR L. WRIGHT,**
Appellants,

v.

**OFFICE OF THE ATTORNEY GENERAL, DEPARTMENT OF LEGAL AFFAIRS, STATE OF FLORIDA, UNITED HOME FRONT,** and **BRYAN BERRY,**
Appellees.

No. 4D15-1173

[July 12, 2017]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Michael L. Gates, Judge; L.T. Case No. 08-49280 (12).

Claudia T. Pastorius, Tampa, Crane Johnstone and Robyn L. Sztyndor, Fort Lauderdale, for appellants.

Pamela Jo Bondi, Attorney General, Fulvio Joseph Gentili and Laura J. Boeckman, Assistant Attorneys General, Tallahassee, for appellee Office of the Attorney General, Department of Legal Affairs.

***ON MOTION FOR REHEARING***

WARNER, J.

We grant the motion for rehearing, withdraw our prior opinion, and issue the following in its place.

Appellants challenge a substantial judgment against them in favor of the Office of the Attorney General ("OAG") for unfair and deceptive trade practices allegedly committed in connection with the provision of services for delinquent mortgagors. The court determined liability by summary judgment and damages through an evidentiary hearing. As to the liability judgment, disputed issues of material fact remain. As to the damage award, the evidence did not support the amount ordered. We reverse and remand for further proceedings.

Outreach Housing, LLC, and its principal, Blair Wright (collectively, "Outreach"), began operating as a service agent for homeowners facing

foreclosure in 2007, and continued operating up until January 2009. After receiving many complaints against Outreach by its clients, the OAG launched an investigation. It found that Outreach solicited clients through TV commercials and online ads by representing that Outreach would provide assistance to those facing foreclosure. In its marketing, Outreach urged homeowners: "Don't loose [sic] your home. Get the assistance you need. Stop the foreclosure action by calling today." Outreach represented to potential clients that it would interact with lenders to obtain mortgage or foreclosure relief. According to many of the homeowners who contracted with Outreach, the firm's representatives falsely told them that they would obtain mortgage modifications, and that Outreach would provide attorneys to represent them in foreclosure proceedings.

As part of its solicitation process, Outreach representatives would conduct interviews of homeowners via telephone and elicit information about inaccuracies in their original loan. They would tell each homeowner that their lender had violated the law and solicit the homeowner to purchase Outreach's services. Part of their protocol was to tell Outreach clients not to make mortgage payments to their lenders. Instead of working to mitigate the loans, Outreach's strategy was to delay foreclosures while it collected monies from its clients.

Based upon the complaints and its investigation, the OAG filed a complaint against Outreach for violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"). The second amended complaint alleged that Outreach had actual knowledge or should have known of the unfair and deceptive trade practices of the corporation. It alleged that from 2007 until the date of the complaint, Outreach engaged in deceptive trade practices designed to induce consumers to purchase its services through a series of false and fraudulent misrepresentations, including that Outreach would render assistance in mortgage loan mitigation and foreclosure defense, and that homeowners should pay Outreach two-thirds of their monthly mortgage payments, in return for which Outreach would negotiate with the homeowners' lenders. The OAG's complaint quoted from a complaint filed by Outreach against one of its participating attorneys in which Outreach alleged that it collected monthly payments from homeowners which were deposited in an account from which the costs of litigation were paid, and Outreach and the attorneys shared the remainder based upon a pre-agreed fee structure. In contrast to these statements by Outreach, the OAG's complaint alleged that Outreach represented to homeowners that the homeowner controlled the funds in the account, the attorney was not paid by Outreach, and there was no division of fees between Outreach and the attorneys.

2

The OAG's complaint further charged that Outreach engaged in the unauthorized practice of law by analyzing homeowners' mortgage documents for violations of federal law. It alleged that Outreach engaged in the unauthorized practice by employing attorneys to provide services for its clients and controlling the way that the attorneys would be paid. In addition, the complaint alleged that Outreach violated Chapter 817, Florida Statutes, regarding credit counselling and debt management services.

As a result of these deceptive and unfair trade practices, the complaint alleged that 1) homeowners paid for debt reduction services that they did not receive and that were not provided by Outreach; 2) Outreach failed to provide attorneys or to pay for attorneys; and 3) Outreach enriched themselves at the expense of the homeowners. The complaint sought to recover actual damages suffered by the consumers, as well as to obtain injunctive relief against Outreach.

Outreach answered, generally denying the allegations and claiming as affirmative defenses that all actions Outreach took were done in good faith, based upon legal advice, and without any willful intent to violate any rules or regulations.

The OAG moved for summary judgment. It relied on a stipulation entered into by Outreach in proceedings before the Florida Supreme Court in which Outreach agreed to a permanent injunction preventing it from engaging in the unauthorized practice of law as described in the stipulation. The motion for summary judgment characterized the stipulation as an admission by Outreach and asserted that Outreach had engaged in the unauthorized practice of law. The motion also relied on the statements of various Outreach customers that Outreach represented to them that it would render assistance in mortgage loan mitigation and foreclosure defense for homeowners. The customers also stated that Outreach made various representations to them regarding illegalities in their mortgage documents. The motion alleged that although Outreach referred its customers to licensed attorneys, the services provided were minimal and, in many instances, non-lawyers performed lawyer functions, such as preparing and filing court documents. In part, the motion relied on section 501.1377(3)(b), Florida Statutes (2008), which provided that it is unlawful to charge for mortgage foreclosure related services before they are completed. However, this statute was not included in the allegations of the complaint and was not in effect during the time period of activity covered by the complaint.

In addition to the unauthorized practice of law, the motion for summary judgment contended that Outreach engaged in an "illicit lawyer referral

service," because Outreach charged a fee to refer its customers to a lawyer. The Rules Regulating the Florida Bar prohibit a lawyer from taking a referral from a service unless the service does not charge for a referral. The motion characterized this practice as a deceptive practice under FDUTPA because, it alleged, consumers were deceived into thinking lawyers would take their foreclosure cases when, in actuality, lawyers would be prohibited from doing so.

Wright filed an affidavit in opposition, together with documents of support, stating that Outreach never provided credit reduction services. It did not tell clients not to pay their mortgages, and it attached a client letter with standard language informing the client to pay the mortgage. Wright's affidavit attested that Outreach did not split fees with lawyers but was paid for non-legal services that it provided, which included use of claims management software and a database of mortgage foreclosure documents developed by Outreach. According to Wright, the customers chose their own attorneys, and Outreach did not direct how the attorneys represented their clients. Each of the attorneys had a pre-negotiated fee agreement for a set fee for services to the homeowner. Outreach frequently facilitated communication between the attorney and client. Wright attested that Outreach did not draft any legal documents. Wright's affidavit stated that all clients were fully informed as to the services Outreach provided, which included the review of the homeowner's mortgage documents by an attorney. Wright also took issue with the specific persons upon whose testimony and statements the OAG relied in the summary judgment motion, noting that they were disgruntled employees, one of whom was sued by Outreach, and one of whom attempted to open a competing business. As to the specific customers cited by the OAG in its motion, Wright attested that they had received all of the services for which they had paid.

After a hearing, the trial court granted summary judgment as to liability without further elaboration as to the grounds upon which it was granted. Subsequently, the trial court held a hearing to establish the amount of the judgment. Although the complaint had requested an award of actual damages, at the hearing, the OAG requested an award of restitution of all of the payments made by complaining clients of Outreach. A senior investigator stated that 252 customers had complained to the OAG regarding Outreach, although only 108 submitted statements which were admitted into evidence pursuant to section 501.207(7), Florida Statutes (2008). Nevertheless, the trial court ultimately granted restitution for all 252 complaining clients and entered judgment for $880,643, after subtracting reimbursements Outreach had already made to various clients.

The court then considered whether to grant a civil penalty pursuant to section 501.2075, Florida Statutes (2008), which permits the court to award a penalty of "not more than $10,000 for each . . . violation" if the court finds that the person or entity has willfully used a method, act, or practice found to be a deceptive act under section 501.204, Florida Statutes (2008). The court heard testimony from one of the lawyers working with Outreach that he had been referred clients from Outreach, and Wright himself admitted that clients would appoint him as attorney-in-fact to control the "escrow account" where the client's payments to Outreach were deposited. Out of those accounts, Wright transferred more than fifty percent of the funds to his wife, who deposited $517,000 into a CD held in her name. Wright also used client funds to make payments on cars registered to him and his children as well as on the mortgage on his home and his American Express bills.

In its final judgment, the court found that Outreach engaged in conduct that constituted deceptive and/or unfair trade practices under section 501.204, Florida Statutes. Wright's control of Outreach was conclusively established by a stipulation in which he admitted he solely controlled and directed the operations of Outreach. The court found that Wright failed to show a good faith defense to the deceptive practices because of his payment of his own personal expenses from the escrow account where homeowners' funds were deposited. Wright's transfer of $517,000 from homeowners' funds to his then-wife belied Wright's good faith defense. As 745 consumers engaged Outreach to provide mortgage relief assistance and paid Outreach for assistance which was not rendered, the court found 745 violations and entered a civil penalty judgment for $7,450,000. From this judgment, Outreach and Wright appeal.

A trial court's ruling on a motion for summary judgment finding liability is reviewed de novo. *Cambridge Credit Counseling Corp. v. 7100 Fairway, LLC*, 993 So. 2d 86, 88 (Fla. 4th DCA 2008).

> A trial court may enter summary judgment only when there are no genuine issues of material fact conclusively shown from the record and the movant is entitled to judgment as a matter of law. All doubts and inferences must be resolved against the moving party, and if there is the slightest doubt or conflict in the evidence, then summary judgment is not available.

*Reeves v. N. Broward Hosp. Dist.*, 821 So. 2d 319, 321 (Fla. 4th DCA 2002) (citation omitted); *accord Shreffler v. Philippon,* 873 So. 2d 1280, 1281 (Fla. 4th DCA 2004).

5

It appears from our review of this rather jumbled record that disputed issues of fact remain as to all issues of liability. Outreach, through affidavits and documents, contested every alleged deceptive practice, including whether its representatives had made false promises regarding loan reductions and whether to pay the underlying mortgage; whether Outreach, a non-lawyer entity, had given legal advice; and whether client funds received by Outreach were for the sole purpose of paying the lawyer or whether Outreach provided non-lawyer services for which it was entitled to be paid. It also provided evidence that it sought the advice of attorneys when setting up its business to make sure that it operated legally.

In seeking summary judgment, the OAG relied to a substantial degree on a stipulation entered into by Outreach and The Florida Bar to terminate a complaint of unlicensed practice of law by The Bar. However, in the stipulation, Wright and Outreach specifically did not admit any wrongdoing. Thus, the stipulation cannot be taken as an admission that Outreach engaged in the unauthorized practice of law and, further, cannot conclusively establish liability on the part of Outreach. In addition, the OAG claims that fee-sharing with lawyers violated rule 4-7.22 of the Rules Regulating the Florida Bar.[1] Outreach denies that it split fees. Instead, it contends that it was paid for services which it provided to the clients and lawyers, including access to its very extensive database of foreclosure documents.

Moreover, the OAG also relied on evidence of a violation of section 501.1377, Florida Statutes, to support summary judgment. Not only was a violation of this section not pled in the complaint, but the statute also was not in effect for the time period of the complaint.

In sum, the summary judgment evidence and the affidavit in opposition showed that material issues of fact remain. While the OAG's evidence is strong, if believed by the trier of fact, Outreach had a different version and explanation of what occurred. The OAG did not erase the doubt created by the opposing evidence. We must reverse.

Because this case will be remanded for further proceedings, we briefly address the damages. Although in the complaint the OAG sought actual damages suffered by consumers, it requested restitution at the final hearing. Section 501.207, Florida Statutes, provides:

---

[1] We are unclear as to how fee-splitting could be a deceptive and unfair trade practice in this case, unless there were a representation to the client that all monies being collected were to pay for attorney's fees when they were not.

The enforcing authority may bring:

(a)  An action to obtain a declaratory judgment that an act or practice violates this part.

(b)  An action to enjoin any person who has violated, is violating, or is otherwise likely to violate, this part.

(c)  An action on behalf of one or more consumers or governmental entities for the actual damages caused by an act or practice in violation of this part.

§ 501.207(1), Fla. Stat.  Actual damages are an essential element of a FDUTPA claim.  *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006).  The question is whether restitution comes within the remedies available to the enforcing authority under the statute.  Although no Florida case has directly held that restitution is an available remedy, several cases have permitted the enforcing authority to proceed on restitution claims.  *See, e.g., E-Racer Tech, LLC v. Office of the Attorney Gen. Dep't of Legal Affairs*, 198 So. 3d 1107, 1110 (Fla. 4th DCA 2016); *State v. Beach Blvd Auto., Inc.,* 139 So. 3d 380, 394 (Fla. 1st DCA 2014).

One federal case has squarely held that restitution is an available remedy under FDUTPA.  In *Federal Trade Commission v. Mylan Laboratories, Inc.*, 99 F. Supp. 2d 1 (D.D.C. 1999), the Federal Trade Commission and thirty-three states, including Florida, sued manufacturers of generic lorazepam, alleging violation of antitrust laws as a result of illegal licensing agreements which allowed for excessive pricing of drugs.  *Id.* at 4-5.  The claims in Florida included claims for restitution under FDUTPA.  *Id.* at 6.  The district court first disallowed the restitution claims by a number of states, including Florida, on grounds that the statutes didn't allow those remedies.  *Id.* at 4-5.  On rehearing, it concluded that restitution was available as a remedy.  As to Florida, the court reinstated the restitution claims, specifically explaining that the broad language in section 501.207, Florida Statutes, indicated that the Florida Legislature intended to provide a full range of equitable monetary relief under FDUTPA. *Mylan*, 99 F. Supp. at 6.

The statute itself has language allowing the enforcing authority to seek any available remedy.  Section 501.207(1), Florida Statutes, is amplified by section 501.207(3), Florida Statutes, which allows a court to grant "legal, equitable, or other appropriate relief" in a FDUTPA action brought by an enforcing authority.

7

Different sections of the act refer to "restitution," thus supporting the notion that restitution is a remedy available under FDUTPA. Section 501.2075, Florida Statutes, provides that the department or court may waive a civil penalty if a defendant "has previously made full restitution or reimbursement or has paid actual damages to the consumers or governmental entities" injured by an "unlawful act or practice." Section 501.2077(3), Florida Statutes (2008), states that an "order of restitution or reimbursement based on a violation of this part committed against" certain classes of defendants are to be given "priority over the imposition of civil penalties[.]"[2]

Allowing the enforcing authority to seek the remedy of restitution is consistent with the policy statements in the statute itself. Section 501.202, Florida Statutes (2008), states that FDUTPA "shall be construed liberally to promote the following policies":

>    (1)  To simplify, clarify, and modernize the law governing consumer protection, unfair methods of competition, and unconscionable, deceptive, and unfair trade practices.
>
>    (2)  To protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce.
>
>    (3)  To make state consumer protection and enforcement consistent with established policies of federal law relating to consumer protection.

§ 501.202, Fla. Stat. (2008). As Judge Gross noted in his concurring opinion in *Dorestin v. Hollywood Imports, Inc.*, 45 So. 3d 819 (Fla. 4th DCA 2010), "[p]art of the 'liberal' construction required by the statute is to construe statutory damage remedies in a way that makes consumers whole." *Id.* at 826 (Gross, J., concurring). Restitution is a remedy that makes the consumer whole. Thus, we conclude that the enforcing authority can seek consumer restitution under FDUTPA.

Nevertheless, the trial court's award must be revisited. The court awarded restitution for 252 customers who complained to the OAG regarding Outreach. The trial court admitted evidence of these complaints pursuant to section 501.207(7), Florida Statutes. While we conclude that the statements could be admitted pursuant to this section, only 108 such

---

[2] This language was moved to subsection (4) of section 501.2077, Florida Statutes, in 2013. *See* § 501.2077(4), Fla. Stat. (2013).

statements were admitted.  As to the remaining 144 complaining clients, no statements were offered.  Therefore, there was no competent evidence either of complaints or of the amount of the payments as to those consumers who did not bother to file a written complaint.

With respect to the civil penalty, we do not address the issue of whether or not it should apply, or in what amount, as the factual underpinning for an award will be litigated on remand.[3]

For the foregoing reasons, we reverse the final judgment and remand for further proceedings consistent with this opinion.

GROSS and FORST, JJ., concur.

---

[3] We note that in the second amended complaint, the OAG requested a penalty based upon the number of complaining clients, not the total number of clients. We do not decide whether each client represents a separate violation of FDUTPA for the purposes of extracting the civil penalty.