970 So.2d 887 (2007)
Connie ANDREW and William Andrew, individually, and Connie Andrew as Personal Representative of the Estate of Dustin Andrew, deceased, Appellants,
v.
SHANDS AT LAKE SHORE, INC., a Florida corporation, and The University of Florida Board of Trustees, Appellees.
No. 1D06-4995.
District Court of Appeal of Florida, First District.
December 20, 2007.
Rebecca Bowen Creed of Mills & Creed, Jacksonville; Alan E. McMichael of Stripling *888 McMichael Stripling, Gainesville; Jon M. Herskowitz of The Herskowitz Law Firm, Miami, for Appellants.
Eric P. Gibbs of Hannah, Estes & Ingram, P.A., Orlando; Susan L. Kelsey of Anchors, Smith, Grimsley, Ft. Walton Beach, for Appellees.
PADOVANO, J.
This is an appeal from a final order dismissing a wrongful death complaint against a hospital. The trial court held that the hospital was protected by sovereign immunity because the doctor who was alleged to have been negligent in the care and treatment of the patient was employed by the state. We conclude that immunity afforded to the doctor as a state employee did not inure to the benefit of the hospital. Accordingly, we reverse.
The plaintiffs, Connie and William Andrew, filed a medical negligence suit against Shands at Lake Shore, Inc., a private hospital, and the University of Florida Board of Trustees, an agency of the State of Florida. They alleged that the defendants were liable for the wrongful death of their fifteen-year-old son, Dustin. The medical negligence at issue was attributed to a radiologist who was employed by the Board of Trustees but working at Shands under a joint venture between the two.
As alleged in the complaint, the plaintiffs brought Dustin to the emergency room at Shands at Lake Shore on August 21, 2002. He was suffering from abdominal pain and he had been passing blood in his urine. A radiologist ordered a CT scan but, according to the complaint, he failed to identify a suspicious mass that turned out to be a malignant tumor. The tumor metastasized and ultimately caused Dustin's death.
The operative allegation of the complaint is that the radiologist failed to exercise reasonable care in examining the CT scan and that this failure delayed effective treatment of the tumor. The radiologist was not named as a defendant, but the plaintiffs alleged that Shands was liable for his negligence, because he was working as an agent for Shands under its direct control and supervision.
The relationship between Shands at Lake Shore and the University of Florida Board of Trustees is outlined in the complaint. The University of Florida College of Medicine, acting through the Board of Trustees, employs physicians who are then assigned to work at Shands. As a part of this arrangement, Shands pays a sum of money to the College of Medicine every year to cover the costs of the physicians' salaries. This staffing arrangement is exclusive, at least with respect to the radiologists who are working at the hospital. The only radiologists who are allowed staff privileges at Shands are those who are employed by the College of Medicine.
The University owns the building and leases it to Shands at Lake Shore for use as a hospital. Shands retains control over the medical services provided at the hospital and in this respect it has potential liability for the negligence of the doctors working on the hospital staff. The plaintiffs alleged in the complaint that the radiologist who failed to identify Dustin's malignant tumor was at all times working within the course and scope of his employment by the joint venture between Shands at Lake Shore and the University of Florida Board of Trustees.
Shands moved to dismiss the complaint for failure to state a cause of action. The motion was based on section 768.28(9)(a), Florida Statutes (2002), which provides that an employee of the state is immune from liability for ordinary negligence, under the doctrine of sovereign immunity. The radiologist was not named as a defendant, *889 but the statute also provides that the "exclusive remedy" for an injury caused by a state employee is to file suit against the governmental entity as an employer. Based on this language, Shands maintained that it was not liable to the plaintiffs because it had not employed the radiologist, and that the plaintiffs' only recourse was to sue the Board of Trustees. The trial court agreed and dismissed the claim against Shands with prejudice.
This court has jurisdiction to hear an appeal from the order, even though the case is still pending between the plaintiffs and the Board of Trustees. Because the order disposes of the entire case as to an individual party it is immediately appealable as a partial final judgment. See Fla. R.App. P. 9.110(k); Mang v. Country Comfort Inn, Inc., 559 So.2d 672 (Fla. 3d DCA 1990). Whether the complaint was properly dismissed is a question of law. See Siegle v. Progressive Consumers Ins. Co., 819 So.2d 732 (Fla.2002); Aguila v. Hilton, Inc., 878 So.2d 392 (Fla. 1st DCA 2004). The dismissal order in this case is based on the interpretation of a statute, which is also a question of law. See State v. Burris, 875 So.2d 408 (Fla.2004); Dep't of Revenue v. Lockheed Martin Corp., 905 So.2d 1017 (Fla. 1st DCA 2005). We therefore review the order of dismissal by the de novo standard.
Florida courts have adhered to the principle that a statute must be interpreted according to its plain meaning. See Holly v. Auld, 450 So.2d 217, 219 (Fla.1984). Hence, we begin by considering the full text of the statute.
No officer, employee, or agent of the state or of any of its subdivisions shall be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. However, such officer, employee, or agent shall be considered an adverse witness in a tort action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function. The exclusive remedy for injury or damage suffered as a result of an act, event, or omission of an officer, employee, or agent of the state or any of its subdivisions or constitutional officers shall be by action against the governmental entity, or the head of such entity in her or his official capacity, or the constitutional officer of which the officer, employee, or agent is an employee, unless such act or omission was committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.
§ 768.28(9)(a), Fla. Stat. (2002) (emphasis added).
The radiologist would be immune under this statute, and, as between the radiologist and the Board of Trustees, the plaintiffs' exclusive remedy would be to sue the Board. However, it does not follow to conclude, as the trial court did, that the plaintiffs have no action against a third party who may have been jointly responsible for the radiologist's conduct. The statute does not address the potential liability of third parties. To hold that the plaintiffs have no cause of action against a third party, in this case a private hospital, would require us to read language into the statute that is simply not there.
The argument for dismissing Shands at Lake Shore would be more appealing if we were to read the phrase "exclusive remedy" *890 in isolation. However, we must consider the meaning of this phrase in the context of the entire statute. See Heart of Adoptions, Inc. v. J.A., 963 So.2d 189 (Fla. 2007) (related provisions of a statute must be read together to achieve a consistent whole); Horowitz v. Plantation General Hosp. Ltd. Partnership, 959 So.2d 176 (Fla.2007) (the court must look not only to the words themselves, but also the context in which they are used). The phrase "exclusive remedy" is used in section 768.28(9)(a) to clarify the point of the statute: that an injured plaintiff may not sue a public employee but must instead sue the agency responsible for the employee's conduct. It is not used in a more expansive way to foreclose the potential liability of third parties who would not, in any event, derive immunity from the state.
The protection afforded by sovereign immunity is, by definition, limited to the sovereign. It does not exist for the benefit of private enterprise. The object of section 768.28(9)(a) is to give immunity to state employees and to make it clear that legal responsibility lies only with the State itself under its limited waiver of sovereign immunity. This purpose would be subverted entirely if the statute could be construed in such a way as to effectively transfer the protection intended for a public employee to a private company responsible for the employee's conduct.[1] A private enterprise (Shands of Lake Shore) would have the immunity that is designed to protect the state, and the state (the University Board of Trustees) would be exposed to liability under its limited waiver of sovereign immunity.
Our conclusion that section 768.28(9)(a) does not effectively immunize a private company that is responsible for the conduct of a state employee is supported by the decision in Jaar v. University of Miami, 474 So.2d 239 (Fla. 3d DCA 1985), a case that is nearly identical. There the University of Miami was jointly responsible for the conduct of a doctor who served on the faculty of the College of Medicine and worked for the Public Health Trust of Dade County. The court held that the doctor was immune and that the Trust was liable to the extent of the sovereign immunity waiver but noted that the immunity afforded to the doctor by section 768.28(9)(a) did not extend to the University of Miami. As the court explained,
[T]he sovereign immunity which limits the liability of the Trust shields the doctors. On the other hand, the immunity which attaches to an agent does not revert to its principal. The University receives no sovereign immunity protection from the doctors' relationships to the trust.
Jaar, 474 So.2d at 245.
The court in Jaar also considered the function of sovereign immunity in its analysis. Quoting from a passage in Spangler v. Florida State Turnpike Authority, 106 So.2d 421 (Fla.1958), the court noted that "[t]he legislative purpose in enacting sovereign immunity statutes is to protect the *891 public from `profligate encroachments on the public treasury.'" Jaar, 474 So.2d 245. Because the University of Miami is a private educational institution, the court reasoned, any liability it incurs for the negligence of its agents has no effect on the public treasury.
Shands at Lake Shore argues that Jaar is not controlling, because the cause of action in that case arose before section 768.28(9)(a) was amended to add the "exclusive remedy" provision. This argument is not supported by the opinion itself, but rather by extra record materials obtained from the clerk of the circuit court in Miami. The version of the statute cited in the Jaar opinion is the same as the one we are relying on in this case. We are not persuaded that the court was interpreting the wrong statute. Nor would that change our view here, in any event. As we have explained, the phrase "exclusive remedy" when considered in the context of the entire statute, merely emphasizes that liability lies with the public employer and not the public employee.
For these reasons, we conclude that section 768.28(9)(a), Florida Statutes, does not foreclose a claim of liability against Shands at Lake Shore for the conduct of a public employee working under its supervision and control. The order dismissing the complaint on this ground is reversed, and the action may proceed in the trial court against both of the original defendants.
Reversed.
WEBSTER and POLSTON, JJ., concur.
NOTES
[1] Our decision is based solely on our interpretation of section 768.28(9)(a), Florida Statutes, but we share the broader concerns recently expressed in University of Florida Board of Trustees v. Morris, 32 Fla. L. Weekly D1803, ___ So.2d ___, 2007 WL 2141805 (Fla. 2d DCA July 27, 2007) (Altenbernd, J. concurring) about the staffing of private companies with public employees. As Judge Altenbernd stated, "[t]he idea that the government can now enter into favorable leases and contracts based at least in part on the government's ability to expand its umbrella of sovereign immunity to favor some private enterprises over others is an idea that warrants very close scrutiny." We agree. Sovereign immunity belongs to the government. It is not a device that can be manipulated to limit the liability of a private enterprise.