# Third District Court of Appeal

## State of Florida

Opinion filed January 17, 2024.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D22-2121
Lower Tribunal No. 17-29075
_____

**Peter Irwin, Ph.D.,**
Appellant,

vs.

**Signal Safe, Inc., etc.,**
Appellee.

An appeal from a non-final order from the Circuit Court for Miami-Dade County, Oscar Rodriguez-Fonts, Judge.

Whitelock & Associates, P.A., and Meredith A. Chaiken, and Christopher J. Whitelock (Fort Lauderdale), for appellant.

VLP Copenhaver Espino, Mike Piscitelli, and Kristen M. Jimenez (Fort Lauderdale), for appellee.

Before SCALES, HENDON, and MILLER, JJ.

MILLER, J.

This is one of two companion appeals implicating the role sovereign immunity occupies in a tort claim stemming from a contractual relationship between two public entities.[1]  Appellant, Peter Irwin, Ph.D., an engineering professor at Florida International University ("FIU"), challenges an order denying a motion to dismiss a negligence and defamation action filed in the lower tribunal by appellee, Signal Safe, Inc.  On appeal, Dr. Irwin contends the trial court erred in failing to find he was cloaked from liability by sovereign immunity.  We have jurisdiction.  See Fla. R. App. P. 9.130(a)(3)(F)(ii).  For the reasons set forth below, we reverse.

**BACKGROUND**

This dispute finds its genesis in a series of contracts executed between the Florida Department of Transportation ("FDOT") and FIU.  Under the terms of the contracts, FIU agreed to evaluate the performance of traffic reinforcement devices manufactured by Signal Safe in simulated storm conditions using the Wall of Wind, an engineering testing facility located on campus.  Dr. Irwin was designated as a "co-principal investigator."  After performing testing, the team of professionals involved reported unfavorable results to FDOT.  Dr. Irwin allegedly also published the findings in a public presentation to FDOT.

---

[1] This case was consolidated with 3D22-2122 for purposes of oral argument.

Signal Safe subsequently filed suit in the circuit court against FIU, Dr. Irwin, and Dr. Ioannis Zisis, the "principal investigator" assigned to the project. The claims against Dr. Zisis are the subject of the companion appeal.

The complaint proceeded through several different iterations. In the operative pleading, the Fifth Amended Complaint, Signal Safe alleged that Dr. Irwin exceeded the scope of his employment by opining as to the efficacy of the traffic devices and engaging in unlicensed engineering that extended beyond the bounds of the teaching exception codified in section 471.0035, Florida Statutes (2022). See id. ("For the sole purpose of teaching the principles and methods of engineering design, . . . a person employed by a public postsecondary educational institution . . . is not required to be licensed under the provisions of this chapter as a professional engineer."). In addition, Signal Safe asserted Dr. Irwin committed defamatory torts by publishing and presenting the results of the testing.

Contending that all the actions asserted as a basis for recovery in the complaint occurred within the scope of employment, Dr. Irwin moved to dismiss on sovereign immunity grounds. The trial court denied the motion, and the instant appeal ensued.

**STANDARD OF REVIEW**

3

"The issue of sovereign immunity . . . is a legal issue subject to a de novo standard of review." Plancher v. UCF Athletics Ass'n, Inc., 175 So. 3d 724, 725 n.3 (Fla. 2015); see also Dist. Bd. of Trs. of Mia. Dade Coll. v. Verdini, 339 So. 3d 413, 417 (Fla. 3d DCA 2022) ("We review the trial court's determination regarding sovereign immunity, a question of law, de novo. The issue of sovereign immunity may properly be considered on a motion to dismiss.") (internal citations omitted). In considering the propriety of a ruling on a motion to dismiss, the reviewing court is constrained by consideration of only the facts alleged within the four corners of the complaint, along with any incorporated attachments. See Univ. of S. Fla. Bd. of Trs. v. Moore, 347 So. 3d 545, 547–48 (Fla. 2d DCA 2022).

## ANALYSIS

"[D]eeply rooted in feudal notions of the divine right of kings," sovereign immunity stems from the premise that "the King can do no wrong." Hughes v. Metro. Gov't of Nashville & Davidson Cnty., 340 S.W.3d 352, 360 (Tenn. 2011) (quoting Cooper v. Rutherford County, 531 S.W.2d 783, 786 (Tenn. 1975) (Henry, J., dissenting)). Distilled to its essence, "[t]he doctrine . . . provides that a sovereign cannot be sued without its own permission." Am. Home Assurance Co. v. Nat'l R.R. Passenger Corp., 908 So. 2d 459, 471 (Fla. 2005).

4

"In Florida, sovereign immunity is the rule, rather than the exception . . . ." Pan-Am Tobacco Corp. v. Dep't of Corr., 471 So. 2d 4, 5 (Fla. 1984). The State and its subdivisions are shielded from civil liability unless sovereign immunity is waived by legislative enactment or constitutional amendment. See Art. X, § 13, Fla. Const. In this vein, "[t]he immunity of the State of Florida and its agencies from liability for claims arising under Florida law or common law is absolute absent a clear, specific, and unequivocal waiver . . . ." State, Dep't of Elder Affs. v. Caldwell, 199 So. 3d 1107, 1109 (Fla. 1st DCA 2016) (citing Klonis v. State, Dep't of Revenue, 766 So. 2d 1186, 1189 (Fla. 1st DCA 2000)).

The Legislature has waived the State's sovereign immunity from liability for torts, "subject to the limitations specified in [section 768.28, Florida Statutes (2022)]." § 768.28(1), Fla. Stat. That statute provides, in pertinent part:

> In accordance with [article X, section 13 of the Florida Constitution], the state, for itself and for its agencies or subdivisions, hereby waives sovereign immunity for liability for torts, but only to the extent specified in this act. Actions at law against the state or any of its agencies or subdivisions to recover damages in tort for money damages against the state or its agencies or subdivisions for injury or loss of property, personal injury, or death caused by the negligent or wrongful act or omission of any employee of the agency or subdivision while acting *within the scope of the employee's office or employment* under circumstances in which the state or such agency or

5

subdivision, if a private person, would be liable to the claimant, in accordance with the general laws of this state, may be prosecuted subject to the limitations specified in this act.

Id. (emphasis added).  A corollary provision, section 768.28(9)(a), Florida Statutes, further clarifies:

An officer, employee, or agent of the state or of any of its subdivisions may not be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

The net effect of these two provisions is to insulate state employees from personal liability for torts committed within the scope of employment, absent the required scienter findings, while simultaneously allowing recourse against the State.  Together, these provisions are intended "to give immunity to state employees and to make it clear that legal responsibility lies only with the State itself under its limited waiver of sovereign immunity."  Andrew v. Shands at Lake Shore, Inc., 970 So. 2d 887, 890 (Fla. 1st DCA 2007).

In analyzing whether an act occurred "within the scope of employment," Florida courts are governed by a tri-partite inquiry, consistent with the Restatement (Second) of Agency section 228 (Am. L. Inst. 1958):

(1) [Whether] the conduct is of the kind the employee is hired to perform; (2) [whether] the conduct occurs substantially within the time and space limits authorized or required by the work to be

6

performed; and (3) [whether] the conduct is activated at least in part by a purpose to serve the [employer].

Fernandez v. Fla. Nat'l Coll., Inc., 925 So. 2d 1096, 1100 (Fla. 3d DCA 2006) (quoting Sussman v. Fla. E. Coast Props., Inc., 557 So. 2d 74, 75–76 (Fla. 3d DCA 1990)). This inquiry ordinarily "presents a question for jury determination." Garcy v. Broward Process Servers, Inc., 583 So. 2d 714, 716 (Fla. 4th DCA 1991) (Glickstein, J., dissenting) (citing Gonpere Corp. v. Rebull, 440 So. 2d 1307, 1307 (Fla. 3d DCA 1983)); see also De Martinez v. Lamagno, 515 U.S. 417, 442 (1995) (Souter, J., dissenting) ("[L]itigating the question whether an employee's allegedly tortious acts fall within the scope of employment will, of course, always require some evidence to show what the acts were. Accordingly, there will always be overlap between evidence going to the scope-of-employment determination and evidence bearing on the underlying liability claimed by the plaintiff . . . ."); Restatement (Second) of Agency § 229 cmt. a. (Am. L. Inst. 1958) ("The limits of the scope of employment are dependent upon the facts of the particular case."). But where the application of sovereign immunity is readily apparent on the face of the complaint, "it may be argued as a basis for a motion to dismiss." Rankin v. Colman, 476 So. 2d 234, 238 (Fla. 5th DCA 1985).

Against these principles, we turn to the case at hand. Signal Safe's theory of liability on the claim of ordinary negligence is two-fold: (1) Dr. Irwin

7

exceeded the scope of the contracts in opining "about the performance and ineffectiveness of [Signal Safe's] and others' devices to FDOT;" and (2) Dr. Irwin improperly performed unlicensed engineering. Signal Safe further asserts liability on the basis that Dr. Irwin published and presented the test results. We examine each theory, in turn.

Under the express terms of the original contract appended to the operative complaint, Dr. Irwin was selected to serve as a co-principal investigator. In that capacity, he was further obligated by subsequently ratified work orders to perform testing and report his results to FDOT.

It is well-settled that "[e]xhibits attached to the complaint are controlling." Ginsberg v. Lennar Fla. Holdings, Inc., 645 So. 2d 490, 494 (Fla. 3d DCA 1994). Hence, to the extent the allegations in "the complaint are contradicted by the exhibits, the plain meaning of the exhibits will control." Id. Applying these principles here, the bare allegation, contradicted by the contractual documents, that Dr. Irwin exceeded the scope of his employment in reporting the test results is insufficient to overcome sovereign immunity.

Signal Safe further alleges "the development of a test method for assessing the performance of vehicular traffic signal assemblies during hurricane force winds . . . constitutes the practice of engineering." Accepting

8

these allegations as true, as we must, Signal Safe has failed to plead any nexus between the purported lack of licensure and the damages claimed in the complaint. And, perhaps more importantly, the claim against Dr. Irwin is one of ordinary negligence. This is insufficient to erode the broad sovereign immunity conferred upon state employees.

The remaining allegations in the complaint establish that Dr. Irwin performed the services during his employment and in his contractual capacity as co-principal investigator. Given that FIU was the financial beneficiary of the contract, these facts, as alleged, demonstrate that any tortious actions were both contemplated by and purposed to serve the employer. See Weiss v. Jacobson, 62 So. 2d 904, 906 (Fla. 1953) (en banc).

This rationale extends equally to the defamatory torts. As an employee of a public university, Dr. Irwin enjoyed broad protection for statements made in reports, papers, and presentations. See Stephens v. Geoghegan, 702 So. 2d 517, 522 (Fla. 2d DCA 1997) ("Public officials who make statements within the scope of their duties are absolutely immune from suit for defamation."). This is true even though he was an associate professor. Id. ("Florida law affords this protection to low-level, as well [as] high-placed public officials.") (citation omitted).

9

Accordingly, we conclude the claims are barred by sovereign immunity. Therefore, we reverse the order under review and remand with instructions to dismiss the claims.

Reversed and remanded.